No. 44,178

JERRY R. HAZLETT, *Appellee,* v. MOTOR VEHICLE DEPARTMENT, STATE HIGHWAY COMMISSION OF KANSAS, *Appellant.*

(407 P. 2d 551)

Opinion filed November 6, 1965.

*Ralph G. Ball,* of Topeka, argued the cause, and *Robert C. Londerholm, C. N. Henson, Jr.* and *William L. Stevenson,* of Topeka, were with him on the brief for the appellant.

*Robert S. Wunsch,* of Kingman, argued the cause and *Paul R. Wunsch* and *David D. Gaumer,* of Kingman, were with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The Motor Vehicle Department of the State Highway Commission of Kansas, referred to hereinafter as the Department, has perfected this appeal from a judgment of the District Court of Kingman County, setting aside an order of the Department revoking the motor vehicle operator's license of Jerry R. Hazlett, appellee.

The parties agree, in substance, that the question involved is: Did the appellee, Jerry R. Hazlett, have reasonable grounds for his refusal, if there was a refusal, to submit to a chemical test of his blood as provided for in K. S. A. 8-1001, which reads as follows:

"*Consent to submit to chemical test deemed given, when; administration of test; procedure upon refusal to submit to test.* Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given his consent to submit to a chemical test of his breath, blood, urine, or

saliva for the purpose of determining the alcoholic content of his blood whenever he shall be arrested or otherwise taken into custody for any offense involving operating a motor vehicle under the influence of intoxicating liquor in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to his arrest the person was driving under the influence of intoxicating liquor. The test shall be administered at the direction of the arresting officer. If the person so arrested refuses a request to submit to the test, it shall not be given and the arresting officer shall make to the vehicle department of the state highway commission a sworn report of the refusal, stating that prior to the arrest he had reasonable grounds to believe that the person was driving under the influence of intoxicating liquor. Upon receipt of the report, the vehicle department of the state highway commission shall suspend for a period not exceeding ninety (90) days the person's license or permit to drive or nonresident operating privilege and, after granting the person an opportunity to be heard on the issue of the reasonableness of his failure to submit to the test, the vehicle department of the state highway commission may revoke the person's license or permit to drive or nonresident operating privilege."

Jerry P. Hazlett was arrested by Trooper Glen R. Clopton of the Kansas Highway Patrol on December 14, 1963, at a point about one and one-half miles west of Cunningham, Kansas, on U. S. Highway 54, and charged with driving a vehicle while under the influence of intoxicating liquor. While enroute to the sheriff's office in Kingman, Trooper Clopton requested appellee to submit to a blood test. The request was refused and no reason for the refusal was given. Trooper Clopton did not advise appellee as to the consequences of his refusal.

When Trooper Clopton and the appellee arrived at the sheriff's office they were met by Trooper Richard Roberts of the Kansas Highway Patrol. Trooper Roberts testified that when he met Trooper Clopton and appellee at the sheriff's office that appellee was staggering, had an odor of alcohol on his breath and was loud and boisterous. Trooper Roberts testified on direct examination that he asked appellee two or three times to submit to the test but that he would not assent to the request and he did not submit to the test.

Trooper Roberts further testified that he advised appellee of the consequences of his refusal. The testimony of Trooper Roberts on this point on cross-examination is as follows:

"Q. Do you remember everything that you say to everybody every time you pick them up?

"A. No, sir.

"Q. Is it possible that you might be mistaken as to advising him of the consequences of his refusal?

"A. I suppose it's possible but not probable."

Trooper Clopton subsequently submitted a sworn report of refusal to the department and appellee's license was suspended for a period not exceeding 90 days in accordance with the provisions of the statute.

At the request of appellee a hearing was had in Kingman by an examining agent of the department. The examiner found that appellee did not have reasonable grounds to refuse to submit to a blood alcohol test and that his driver's license should be revoked for a period of one year.

Thereafter appellee filed his petition in the District Court of Kingman County, Kansas, as provided for in K. S. A. 8-259. In his petition, appellee relates the facts as stated herein and alleges that his refusal to submit to the chemical blood test was reasonable. The prayer of the petition asks that the order of the Department be set aside and that judgment be entered directing that petitioner is entitled to a license to drive vehicles in Kansas.

Issues were joined, a trial was had to the court and judgment entered for the petitioner. Thereupon the Department perfected this appeal.

In the memorandum opinion filed herein, the trial court stated that it based its findings and decision on two general grounds:

"First, it seems to me that before a licensee should be charged with the statutory consequences of refusal to submit to a test to determine the alcoholic content of his blood, it should be clearly established that he did knowingly and understandingly so refuse. In view of the evidence adduced it seems doubtful if he really understood what he was doing; Secondly, in a case like this one where the subject was so apparently drunk, rather than just in the 'under the influence' stage, G. S. 1961 Supp., 8-1001, really serves no useful purpose. The officers here didn't need a positive result to bolster their evidence and considering the testimony of the officers as to the condition of the subject, I doubt if the receipt of a negative result would or should have had any real influence on the matter of prosecution or verdict of a jury or decision of the Court as a result of prosecution.

"Thus the reasoning of the Supreme Court in *Lee v. State*, 187 Kan. 566, to the effect that the test is a protection to the subject has no significance in a case where there seems to be no contention that the appellant was anything other than under the influence.

"In short, I find that the refusal, if indeed there was a refusal of the accused to take the test, was reasonable in that he, the accused, was in such a state of intoxication that he did not understand the consequences of such a refusal and, further, that the refusal to take the test when such test would have served no useful purpose, was not unreasonable."

First, the apparent question of whether there was a refusal should be disposed of. This is readily accomplished not only by

the testimony of the two troopers to that effect but by testimony of appellee as well. On direct examination by his own attorney the appellee testified:

"Q. Why did you refuse the blood test?

"A. I was not aware of the consequences if I did refuse the blood test and I thought I was just probably condemning myself if I did take the alcohol test, I didn't realize the law states the way it does.

"Q. You mean you felt if you took the test under your present condition you might fail the test?

"A. Yes."

In fact the appellee clearly admits a refusal in his petition filed in the district court. He states in his petition, "That this petitioner refused the request to submit to a chemical test of his blood, but had he known or been aware of the consequences of his refusal to so submit, he would not have refused the requested test."

The record clearly reveals that appellee not only refused to submit to the test but he did so knowingly.

Counsel for appellee argues that it was reasonable for appellee to refuse to submit to the test on two grounds: that he was not advised of the consequences and that he was so intoxicated he was unable to understand even if he were so advised. It is our judgment that neither ground can be maintained.

In the first place a careful scrutiny of the statute K. S. A. 8-1001, and related statutes contained in article 10 of chapter 8, K. S. A., fails to reveal any mandate directing the arresting officer to inform the accused of the consequences of refusal.

This question was the subject of inquiry before the Supreme Court of Nebraska in *Prucha v. Department of Motor Vehicles*, 172 Neb. 415, 110 N. W. 2d 75, 88 A. L. R. 2d 1055. In construing a Nebraska statute substantially the same as that of Kansas, as to the points and issues raised herein, the court stated:

"The general rule is that all persons are presumed to know and are bound to take notice of general public laws of the country or state where they reside as well as the legal effect of their acts. See, 20 Am. Jur., Evidence, § 211, p. 208; *Anderson v. MacDuff*, 208 Misc. 271, 143 N. Y. S. 2d 257; *People v. Kovacik*, 205 Misc. 275, 128 N. Y. S. 2d 492.

"The language of the statute is clear and there is nothing on its face that requires the police officer to go any further than request the motorist to submit to the test. When the words of the statute are plain, clear, and distinct there is no occasion to resort to other means of interpretation to restrict or extend the meaning. The petitioner is presumed to know the law and he should acquaint himself, at least, with those laws which would affect him. See *Anderson v. MacDuff*, supra.

"The allegation of the plaintiff that he was not fully advised of the consequences of his failure to comply with the statutes does not state facts sufficient to constitute a cause of action."

There is no authority cited nor persuasive reasoning stated by counsel for appellee, by which we would be constrained to write something into the statute not included by the legislature, i. e., a direction to the arresting officer to explain the consequences of refusal.

Our view on this point is consistent with decisions involving statutes similar to K. S. A. 8-1001 in New York, *Anderson v. Mac-Duff,* supra, *People v. Kovacik,* supra, and in North Dakota, *Timm v. State,* N. D. 1961, 110 N. W. 2d 359, 88 A. L. R. 2d 1070. In *Timm v. State,* the Supreme Court of North Dakota held that the question of whether the person was informed that his privilege to drive would be revoked or denied if he refused to submit to such a test was not an issue in a hearing before the state highway commissioner.

Under the view which we have expressed, the proposition submitted by appellee that he may have been too intoxicated to understand the consequences of refusal, even if explained to him, can be disposed of on the grounds that it is immaterial since there is no duty placed on the arresting officer to explain.

We next turn to the second ground on which the trial court based its findings and conclusions, i. e., that the refusal to take the test, when such test would have served no useful purpose, was not unreasonable.

In consideration of this point, it appears that the trial court failed to recognize the marked distinction between a proceedings under K. S. A. 8-259, such as the case at bar, and a criminal prosecution on a charge of driving while under the influence.

The relationship between a proceeding such as this and a prosecution for driving while under the influence of intoxicating liquor was discussed at length and in detail in the recent case of *Marbut v. Motor Vehicle Department,* 194 Kan. 620, 400 P. 2d 982. It was stated in the opinion at page 622:

"The nature of the two proceedings are entirely separate. One (8-530, *supra*) is a criminal prosecution for the violation of a criminal statute prohibiting driving while under the influence of intoxicating liquor. The other (8-1001, *supra*) is a civil proceeding to determine whether the appellee acted reasonably in refusing to submit to a blood test as a prerequisite to the privilege of using the public streets and highways."

From the distinct and separate nature of the two proceedings it is clear that whether or not the results of the chemical test would have served a useful purpose in a prosecution for driving while under the influence is not an issue to be resolved in a proceeding to determine the reasonableness of a refusal to submit to the test. It follows that the contention that the results of the chemical test would serve no useful purpose cannot be sustained as a reasonable ground for refusal to submit to the test.

The judgment of the lower court is reversed.