RICHARD B. MCCONNELL, District Attorney, Waukesha County
You have asked my opinion on a series of questions regarding the Implied Consent Law.
You ask that I confirm my previous opinion on the Implied Consent Law in 59 OAG 183 (1970). I have re-examined that opinion and conclude that it correctly states the law.
The basic issue underlying all of your questions is whether the Implied Consent Law has limited the rule announced in Schmerberv. State of California (1966), 384 U.S. 757, 16 L.ed. 2d 908,86 S.Ct. 1826. In that case, the police took a blood sample in a medically satisfactory manner to determine intoxication. This was done without the consent of the accused. The court held this to be a lawful search which violated no constitutional right. Thus, the court would not exclude the evidence obtained. This is clearly the law apart from implied consent. The problem is that sec. 343.305 (2) (b), Stats., provides in part:
"If the person refuses the request of a traffic officer to submit to a chemical test, no test shall be given . . ."
It was apparently the intention of the legislature that at that point the police need make no further effort to obtain a test, but that the person would be punished for his refusal by the suspension of his operating privilege for 60 days, and the trial on the drunk driving charge would have to proceed without the test evidence.
If a person refused to take the test and the police proceeded to take a blood sample without his consent, this would violate the above quoted statute. However, if such person were under arrest and did not forcibly resist the taking of the blood sample, and probable cause existed for such a search, this would not violate any constitutional right, and the evidence so obtained could be used in court and would not be excluded.Schmerber v. State of California, *Page 175 supra; Ware v. State (1930), 201 Wis. 425 230 N.W. 80; State v.Hochman (1957), 2 Wis.2d 410, 86 N.W.2d 446.
A problem arises, however, where a person not only refuses to submit to the withdrawal of a blood sample but also puts up vigorous physical resistence to such withdrawal. In Rochin v.California (1952), 342 U.S. 165, 72 S.Ct. 205, 96 L.ed. 183, the police forced a suspect to submit to having his stomach pumped over his violent physical resistence. The court held that such conduct shocked the conscience and was so brutal and offensive that it did not comport with traditional ideas of fair play and decency. The court found that such conduct was offensive to due process. In Breithaupt v. Abram (1957), 352 U.S. 432,77 S.Ct. 408, 1 L.ed. 448, a doctor withdrew a blood sample from an unconscious person, and the court said that they could see nothing comparable here to the facts in the Rochin case. The court held (352 U.S. 435-438):
"Basically the distinction rests on the fact that there is nothing `brutal' or `offensive' in the taking of a sample of blood when done, as in this case, under the protective eye of a physician. To be sure, the driver here was unconscious when the blood was taken, but the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right; and certainly the test as administered here would not be considered offensive by even the most delicate. Furthermore, due process is not measured by the yardstick of personal reaction or the sphygmogram of the most sensitive person, but by that whole community sense of `decency and fairness' that has been woven by common experience into the fabric of acceptable conduct. It is on this bedrock that this Court has established the concept of due process. The blood test procedure has become routine in our everyday life. It is a ritual for those going into the military service as well as those applying for marriage licenses. Many colleges require such tests before permitting entrance and literally millions of us have voluntarily gone through the same, though a longer, routine in becoming blood donors. Likewise, we note that a majority of our States have either enacted statutes in some form authorizing tests of this nature or permit findings so obtained to be admitted in evidence. We therefore conclude that a blood test taken by a skilled technician is not such `conduct that shocks the conscience,' Rochin, supra, 342 U.S. at page 172, 72 S.Ct. at page 209, nor such a method of obtaining evidence that it *Page 176 
offends a `sense of justice,' Brown v. Mississippi, 1936,297 U.S. 278, 285-286, 56 S.Ct. 461, 464-465, 80 L.Ed. 682. This is not to say that the indiscriminate taking of blood under different conditions or by those not competent to do so may not amount to such `brutality' as would come under the Rochin
rule. . . ."
In Schmerber v. State of California supra, it was said in footnote 4 (384 U.S. 760):
"We `cannot see that it should make any difference whether one states unequivocally that he objects or resorts to physical violence in protest or is in such condition that he is unable to protest.' Breithaupt v. Abram, 352 U.S., at 441,77 S.Ct., at 413. (WARREN, C.J., dissenting). It would be a different case if the police initiated the violence, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force. Compare the discussion at Part IV, infra."
The constitutional objections to the taking of blood specimens are discussed in 1968 Alcohol and Highway Safety Report, a study transmitted by the Secretary of the Department of Transportation to the Congress, in accordance with the requirements of section 204 of the Highway Safety Act of 1966, Public Law 89-564 (U.S. Government Printing Office, 1968), pages 114-117:
"In Rochin v. California, 342 U.S. 165 (1952), the Supreme Court held that the forcible use of a stomach pump, over the defendant's violent resistance, to extract narcotic pills was official conduct that `shocked the conscience,' and therefore was unconstitutional under the Fourteenth Amendment Due Process Clause. Two later cases, Breithaupt v. Abram, 352 U.S. 432
(1957), and Schmerber v. California, 384 U.S. 757 (1966), held that the extraction of blood in a hospital for a chemical test for alcohol, which though unconsented to was not physically resisted by the defendant, was not unconstitutional under theRochin rule. Thus, the Rochin doctrine seems to be limited to situations where the accused physically resists the extraction of bodily substances for chemical testing.
"Some complex and difficult questions could arise under this doctrine in the administering of chemical tests. In respect to blood tests, a complete spectrum of physical resistance, ranging from *Page 177 
`going limp' to all-out combat, could occur. It seems likely that the Supreme Court would not require the resistance to go very far before invoking Rochin, but it is hard to say whether simply declaring that one `intends to physically resist' the test would be sufficient and if not, how much more than that would be required. The problem is not as likely to arise in connection with breath tests only because they require the active cooperation of the subject, and resistance at any level would probably render them impossible to administer."
From the foregoing, I conclude that the United States Supreme Court has not as yet squarely faced the question whether a blood sample may be withdrawn over the vigorous physical resistance of the person involved. It is possible that they would apply theRochin principle to this situation.
However, the Implied Consent Law, and the requirements and restrictions there imposed regarding tests for intoxication, apply only in connection with a charge of driving under the influence of an intoxicant in violation of sec. 346.63 (1) (a), Stats. See sec. 343.305 (1), Stats. The Implied Consent Law would not apply to violations of other statutes such as secs. 346.63
(2), 940.08, 940.09, and 941.01 (1), Stats., relating to negligent homicide, or injury or death to another person by negligent operation of a vehicle while intoxicated.
It is my opinion that where the traffic officer charges only a violation of sec. 346.63 (1) (a), Stats., he is limited by the terms of the implied consent statute and may not insist on a test without the consent of the accused. However, if in addition to or in lieu of the drunk driving charge, the officer charges a violation of one of the other above-mentioned statutes, then he is not bound by the restrictions of the Implied Consent Law and, subject to the reservations above discussed, may proceed to have a test sample withdrawn against the will of the accused. This assumes, of course, that the accused is, in fact, under arrest and that probable cause exists for such search.
Your first question is:
"1. What, in general, are the respective rights and duties of the arresting officer in a drunken driving case after a citation has been issued and a demand has been made upon a physician at a licensed *Page 178 
hospital to take a blood sample for the purpose of determining blood alcohol level from the alleged driver of an automobile and involved in a fatal accident.
"a. Where the accused consents to the taking of the blood
"b. Where the accused refuses to agree to the taking of the blood
"c. Where the accused is unconscious and is not able to consent to the taking of blood"
Where the accused consents, the blood sample may be taken. Where he does not consent, the sample should not be taken, unless there is a charge of a violation other than drunk driving. Where the accused is unconscious, the blood sample may be taken.Breithaupt v. Abram supra, 59 OAG 185 (1970). In any case, there must be probable cause for an arrest and search.
Your second question is:
"2. In answering No. 1, are the provisions of sec. 343.305
(Implied Consent Law) binding in a fatal accident case where evidence is being sought to support a charge of negligent homicide, under sec. 940.08 or homicide by intoxicated use of the vehicle, sec. 940.09, or negligent homicide, sec. 941.01. In other words, can the fatal accident case be separated legally from the ordinary drunken driving case so as to make it possible for a law enforcement agency to legally demand the taking of a blood sample from a suspect without adhering strictly to the Implied Consent statute which on its face indicates that not only is the blood test `not to be the first test' but that if the suspect refuses to submit to the taking of blood `there shall be no test.'"
As above discussed, the restrictions of the Implied Consent Law are not applicable to cases involving these charges. The warnings required by sec. 343.305 (2) (a), Stats., need not be given, and the provision that no test shall be given, if the person refuses the officer's request for a test, is not applicable.
Your third question is:
"3. Does sec. 343.305 (5) (a) (b) apply generally as to provide immunity to physicians and employes of hospitals acting at the direction of a physician for any civil or criminal liability for *Page 179 
negligence in the actual performance of the act of taking the blood sample. In other words, does sec. 343.305 (5) (b) apply to the demand for the taking of a blood sample by a non-consenting
suspect, if that procedure can be followed apart from the Implied Consent Law to obtain evidence to support a charge of negligent homicide."
Section 343.305 (5) (b), Stats., reads:
"No physician, or other person acting under the directions of a physician, withdrawing blood for the purpose of determining its alcoholic content, nor the employer of anyone withdrawing blood for such purpose, shall incur any civil or criminal liability for such act when requested by a traffic officer to perform it, except for civil liability for negligence in its performance."
Clearly, the grant of immunity applies when the charge is, "driving under the influence of an intoxicant." However, your further question is whether this statutory immunity applies to a physician or other person acting under the physician's direction who withdraws blood for the purpose of determining its alcoholic content, when such evidence is to be used to support charges other than driving under the influence of an intoxicant in violation of sec. 346.63 (1) (a), Stats. For example, sec. 346.63
(2), Stats., provides that it is unlawful to cause injury to another person by the negligent operation of a vehicle while under the influence of an intoxicant. Also, sec. 940.09, Stats., punishes negligent operation of a vehicle while under the influence of an intoxicant causing the death of another person. Obviously, in such cases it is necessary and material to prove that the person was driving under the influence of an intoxicant. Section 885.235 (1), Stats., provides that, whenever it is necessary to prove such facts, evidence of the amount of alcohol in a person's blood as shown by a chemical analysis of a sample of his blood is admissible on this issue. This statute also specifies how such chemical analysis shall be given effect to establish intoxication. Section 343.305 (6), Stats., also provides that the amount of alcohol in a person's blood is admissible on the issue of intoxication and shall be given effect as set forth in sec. 885.235, Stats.
Section 343.305 (5) (b), Stats., quoted above, provides that no physician, or other person acting at his or her direction, who withdraws blood for the purpose of determining its alcoholic *Page 180 
content, shall incur any liability for such act when requested by a traffic officer to perform such act, except that he or she can be liable for negligence in the performance of the act of withdrawing the blood. The language of this immunity statute is fully broad enough to cover the withdrawal of a blood sample for use in any case where evidence of the alcoholic content of the blood is material and necessary. There is no reason to think that the legislature intended to give physicians and medical technicians this protection only in drunk driving cases. It seems clear that the legislature intended to give this protection to the physician or medical technician in any case where proof of the blood alcohol content is material. If this were not the case, how is the physician to know at the time a blood sample is taken what kind of a case it will be used in? Indeed, at the time the sample is taken, the police officer or even the district attorney may not yet have made up his mind what charge will be brought. To place upon the physician at this point in time the burden of determining what the charge is to be, so that he or she may know in advance whether this immunity statute applies, is unreasonable. The legislature could never have intended this.
It is, therefore, my opinion that this immunity statute applies in all cases where blood is withdrawn to determine its alcoholic content, and not just in cases involving driving under the influence in violation of sec. 346.63 (1) (a), Stats.
Your fourth question is:
"4. Does the language under sec. 345.305 [343.305] referred to in No. 3 make a condition precedent to the taking of blood that there be consent by the suspect and that another sample (either a urine or breathalyzer) be received first, and that a citation must be issued and the accused must be informed of his alternative right of refusal with the additional possible penalty. Does Schmerber v. California, 384 U.S. 757 govern the fatal accident case or in Wisconsin is Schmerber pre-empted by Implied Consent 343.305."
The first sentence of this question is answered "yes," except that blood may be taken from an unconscious person as a first test. The Schmerber rule does apply to the fatal accident case which is not limited by the Implied Consent Law. Schmerber is not pre-empted by the Implied Consent Law. *Page 181 
Your fifth question is:
"5. If the suspect is a juvenile under the age of 18 and consents to the taking of his blood, does this have to be joined in by his parents or guardian in order to be effective. If so, does it make a difference as to whether or not the suspect is 16 to 18 years or 18 to 21 years. In conjunction with this, can an unconscious minor be determined not to have withdrawn his consent under sec. 343.305, without the actual consent of his parents or guardian."
The first two sentences of this question are answered "no"; the third is answered "yes." This is because the consent is implied by law. Section 343.305 (1), Stats., provides that any person who operates a motor vehicle upon the public highway shall be deemed to have given consent to a chemical test. By operating a vehicle upon the highway, a person impliedly consents to such a test. This clearly applies to minors as well as to persons who have reached the age of majority. Where a minor driver subsequently submits to a test, he does so in obedience to this law. He does not need the consent of his parent or guardian for such obedience to the law.
Your sixth question is:
"6. Section 343.305 does not define what an `unconscious' person is. Would the standard medical definition apply? Would a mentally deficient or otherwise incompetent person fall under the category of an `unconscious' person under this section?"
The second sentence of this question is answered "yes." Section990.01 (1), Stats. The third sentence is answered "no." However, such person might fall within the definition of "otherwise incapacitated." See sec. 343.305 (1), Stats.
Your seventh question is:
"7. Can a person be so intoxicated so as to negate his ability to consent to the taking of blood, if in your opinion that is a condition precedent in a fatal accident case, or is the rationale of the Implied Consent Law that a person is determined to have given his consent when he commences to operate a motor vehicle upon the highway."
The first part of your question is answered "no." The second part is answered "yes." The theory of the Implied Consent Law is that by driving upon the highway, a person impliedly consents that he will *Page 182 
submit to a test when requested by a traffic officer under the conditions laid down by that law. Repeatedly, persons accused of drunk driving have tried to excuse their refusal to submit to the test on the ground that they were too drunk at the time to know what they were doing. The courts have repeatedly ruled that drunkenness is no excuse for refusal. Bush v. Bright (1968),71 Cal. Rptr. 123, 264 Cal. App. 2d 788; Hazlett v. Motor VehicleDept., State Highway Com'n. (1965), 195 Kan. 439, 407 P.2d 551;State Department of Highways v. Normandin (1969), 284 Minn. 24,169 N.W.2d 222; Perryman v. State (Dist.Ct.App., 1971),242 So.2d 762.
Your eighth question is:
"8. Is sec. 343.305, our Implied Consent Law, constitutional? Does it violate due process by requiring a specific class of persons to give up a portion of their constitutional rights in order to operate an automobile in this state."
In two recent cases, the constitutionality of Implied Consent was upheld as against numerous constitutional challenges including due process. Campbell v. Superior Court (1971),106 Ariz. 542, 479 P.2d 685; Craig v. Commonwealth Dept. of PublicSafety (1971, Ky. App.), 471 S.W.2d 11.
Your ninth question is:
"9. Would the refusal by a physician, a hospital administrator, and an employee acting under the direction of either to take a blood sample after a proper demand has been made by a police officer of a suspect drunken driver in a fatal accident case be the subject of prosecution under either 946.40 (refusing to aid an officer) or 946.41 (obstructing or resisting an officer), under any or all of the circumstances referred to above."
Law enforcement officers have the power to require citizens to assist, them where necessary. This power is referred to as theposse comitatus. In the exercise of this power, such officers may call for help from citizens to assist them in apprehending and arresting a suspect. An example of this is found in Kagel v.Brugger (1963), 19 Wis.2d 1, 119 N.W.2d 394. There a law enforcement officer directed a truck driver to place his large tractor-trailer vehicle across a road to create a roadblock to stop a suspect fleeing in an *Page 183 
automobile. The court held that such a truck driver could not be found negligent for doing what the officer directed him to do. The kind of assistance which traditionally can be required by an officer, under the posse comitatus, is physical help in finding, stopping, arresting, and conveying the suspect to a place of detention. No cases have been found indicating that such power extends beyond the demand for such physical assistance. Whether such power extends to and permits an officer to command a physician or other hospital technician to withdraw a blood sample is not at all clear. While a doctor or a lawyer, like any other citizen, could be ordered to assist an officer in making an arrest, it is not clear that such power extends to a demand for professional services from such a person.
In Waukesha Memorial Hospital v. Baird (1970), 45 Wis.2d 629,173 N.W.2d 700, the court refused to answer, in a declaratory judgment action, this very question because the facts of the case were too shifting and nebulous. The court pointed out that courts have traditionally refused to delineate in advance precisely what constitutes a reasonable search and seizure, and stated that questions of the reasonableness of searches must find resolution in the facts and circumstances of each case. Similarly, I conclude that I should not attempt to express an opinion in the absence of a specific fact situation.
RWW:AOH