[Civ. No. 33475. First Dist., Div. One. Oct. 31, 1973.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
LEO VINCENT LOGUE, Real Party in Interest.

## COUNSEL

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, Doris H. Maier, Assistant Attorney General, Jerome C. Utz, Herbert F. Wilkinson and Robert R. Granucci, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Joseph A. Desmond for Real Party in Interest.

## OPINION

**ELKINGTON, J.**—We issued an alternative writ of mandate for the purpose of determining whether real party in interest Leo Vincent Logue was *"lawfully arrested"* on probable cause to believe he had violated the so-called "Felony Drunk Driving Law." (Veh. Code, § 23101.) Finding that a lawful arrest had not occurred, the superior court had suppressed evidence of a blood test administered under claim of authority of Vehicle Code section 13353.

No conflict appears in the evidence or in such inferences as are reasonably derivable therefrom, upon which the court's conclusion was based. The issue before us accordingly becomes one of law. (*Southern Cal. Collection Co. v. Napkie,* 106 Cal.App.2d 565, 569 [235 P.2d 434]; *Ferner v. Casalegno,* 141 Cal.App.2d 467, 471-472 [297 P.2d 91].)

Logue drove a motor vehicle off the shoulder of a road, over a 20-foot patch of ice plant, and across four traffic lanes of an intersecting highway where he collided with another vehicle. The two occupants of the other car were very seriously injured, requiring immediate medical attention. Logue himself suffered a broken leg and other injuries. A lone uniformed highway patrol officer arriving at the scene took charge of the situation and arranged for hospitalization of the injured persons.

The officer observed Logue to have an odor of alcohol about him. His eyes were red and glassy, and his speech thick, slurred, incoherent and interspersed with profanity; the "statements that he uttered weren't making much sense." The physical evidence at the scene "indicated he was driving in an irregular manner."

Reasonably believing that there was probable cause to arrest Logue for violating Vehicle Code section 23101, the officer made "some gesture" in his direction, and then "advised Mr. Logue he had been placed under arrest for driving while under the influence."

Soon thereafter ambulances arrived and the injured persons, including Logue, were taken away on stretchers. At the hospital a blood test was administered while Logue was unconscious. (See Veh. Code, § 13353, subd. (a), 4th par.) While at, and after being taken from, the accident scene Logue was under no actual police restraint. Several weeks later, after leaving the hospital, he was given a notice to appear in court.

On this evidence the superior court concluded that Logue was not placed under lawful arrest by the officer, a necessary condition precedent to a valid blood test. (See Veh. Code, § 13353, subd. (a); *People* v. *Superior Court (Hawkins)*, 6 Cal.3d 757 [100 Cal.Rptr. 281, 493 P.2d 1145].)

The court reasoned: "He was not booked, there was no hold placed upon him, he was released from the hospital. He was mailed a notice—a complaint was filed against him, . . . I think there was too much of a lapse of time from the time the actual case was commenced after he was released from the hospital. I don't think it was a true arrest. I sympathize with the officer's position. I think he was being a nice guy. He was trying to be very considerate. Unfortunately, he is going to lose—possibly lose a case because of his being a nice guy. That's the way the facts must fall in this case. I think the officer could have taken other steps. He could have, . . . alerted the hospital, put something in writing that he's not going to be released, or to report to the jail upon his release, or report for booking, all sorts of things could have been done. I agree, it's not feasible to have around-the-clock guard, but we can't penalize Mr. Logue because of what is feasible or not feasible."

It will be seen that we are here concerned with the requirements essential to the lawful arrest of a seriously injured suspected drunk driver awaiting transportation from an accident scene to a hospital.

Logue's contentions are in effect an iteration of the above quoted comment of the superior court. He insists that such conclusions were mandated by the case of *People* v. *Superior Court (Hawkins)*, *supra*, 6 Cal.3d 757.

*Hawkins* was factually similar to the case before us, except that there was no suggestion of an arrest prior to the section 13353 blood test. The Supreme Court rejected the People's argument that the arrest required by the statute in such a case was a "mere formality" and but a "meaningless ritual of words." It noted (at p. 765) that "the Legislature took pains

to condition [such blood tests] upon a *lawful arrest* for driving under the influence of intoxicating liquor" (italics added), and held that such a condition precedent to the test was indispensable.

Nowhere does *Hawkins* specify what must be done to effect a lawful arrest under the circumstances. Especially, it does not require that there be an immediate or close custody, or a "booking," or a "hold" preventing the suspect's hospital discharge to anyone but the police. It does not say that the time of the commencement of a prosecution has a bearing on whether a valid arrest had previously been made. Nor does the case suggest that where the police find it "not feasible to have around-the-clock guard" the suspect may not be "penalized" by a blood test.

We turn now to a consideration of the application of the law of arrest to this case.

Penal Code section 841 states: "The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, . . ."

A police officer's uniform is sufficient indicia of authority to make the arrest. (See *Willson* v. *Superior Court,* 46 Cal.2d 291, 294 [294 P.2d 36].)

Penal Code section 834 reads: "An arrest is taking a person into *custody,* in a case and *in the manner authorized by law*. . . ." (Italics added.) It is universally held that the custody or restraint authorized by law in an arrest may be effected by "actual or *constructive* seizure of the person to be arrested."* California courts describe the permissible restraint of an arrest as "actual or *potential* custody." (Italics added.) (*Lowry* v. *Standard Oil Co.,* 54 Cal.App.2d 782, 791 [130 P.2d 1]; *Allen* v. *McCoy,* 135 Cal.App. 500, 509 [27 P.2d 423].)

And in any event the person arrested may only be "subjected to such restraint as is *reasonable* for his arrest and detention." (Italics added.) (Pen. Code, § 835.)

"[W]here the arrest is lawful, subsequent unreasonable delay in taking the person before a magistrate will not affect the legality of the arrest, . . ." (*Dragna* v. *White,* 45 Cal.2d 469, 473 [289 P.2d 428], and see authority there cited.)

---

*Moran* v. *United States,* 404 F.2d 663, 666; *Brinegar* v. *United States,* 165 F.2d 512, 514; *Jenkins* v. *United States,* 161 F.2d 99, 101; *Patty* v. *State,* 74 Okla.Crim. 322 [125 P.2d 784, 788]; *State* v. *District Court,* 70 Mont. 378 [225 P. 1000, 1001]; *Chance* v. *State* (Fla.App.) 202 So.2d 825, 826; *City of Miami* v. *Nelson* (Fla.App.) 186 So.2d 535, 537; *Melton* v. *State* (Fla.) 75 So.2d 291, 294; *State* v. *MacKenzie,* 161 Me. 123 [210 A.2d 24, 32]; *State* v. *Murray,* 106 N.H. 71 [205 A.2d 29, 30].

■ Booking, being "merely a ministerial function," is no part of the arrest process (see *People* v. *Duke,* 276 Cal.App.2d 630, 634 [81 Cal.Rptr. 69]), and delay in or an absence of booking will not affect an otherwise legal arrest.

■ From all of this it appears that Logue was lawfully arrested at the scene of the accident *unless* the law required greater restraint of his person by the police officer.

As we have pointed out, the restraint of an arrest, in proper cases, may be *constructive,* or *potential.* And above all it must be *reasonable* under the circumstances.

We deem it wholly unreasonable under the circumstances here—where an officer on probable cause has informed "the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it"—to require that the officer closely attend that person to the exclusion of the officer's duty to obtain aid for the accident victims, and to prevent further traffic pileups and injuries.

Just as unreasonable, it seems, is the alternative theory that since these other necessary and humanitarian duties prevent close custody of the suspect, he thereby achieves immunity from the operation of Vehicle Code section 13353, to the prejudice of the public generally and the objective of that statute. (See *People* v. *Sudduth,* 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401] [cert. den. 389 U.S. 850 (19 L.Ed.2d 119, 88 S.Ct. 43)].)

Further, we think that failure to maintain close police custody over the hospitalized suspect, or to place a police hold on him, did not reasonably or retroactively affect the validity of an otherwise lawful arrest at the accident scene.

Logue urges that at least the police officer should have shown an intention to arrest him by the issuance of a citation under Penal Code section 853.6. This section was inapplicable to *felony* arrests under Vehicle Code section 23101.

For the reasons stated we conclude, on the undisputed facts and as a matter of law, that Logue was lawfully arrested for violating Vehicle Code section 23101. The superior court accordingly erred in suppressing evidence of the blood test thereafter administered him.

Let the peremptory writ of mandate issue.

Molinari, P. J., and Sims, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied December 27, 1973.