THE STATE OF OHIO *v.* GROSE.

(No. 75TR-C-1842—Decided May 15, 1975.)

Findlay Municipal Court.

*Mr. Robert Beutler, Jr.,* for plaintiff.
*Mr. Wm. Scott O'Brien,* for defendant.

WALKER, J. This matter came on a motion by the defendant to suppress the results of a breathalyzer examination administered to him by an officer of the Ohio State Highway Patrol. The grounds for the motion are that the use of such evidence is a violation of the defendant's

2

right to due process of law guaranteed by both the United States and the Ohio Constitutions.

The facts as set forth on the complaint show that on March 6, 1975 at 5:25 P. M., Michael J. Grose was arrested by an officer of the Ohio State Highway Patrol for a violation of R. C. 4511.19 (driving while intoxicated). The defendant was transported to the Findlay Barracks of the Ohio Highway Patrol. Within the two-hour limitation set forth in the statute, the defendant submitted to a test of bodily substance, in this case his breath, on the so-called breathalyzer. The breathalyzer is a scientific instrument recognized under the statute as an instrument that may be used to analyze such bodily substance.

The defendant requested that the state furnish him with the test ampoule used in any breathalyzer test administered to him and to permit him the opportunity to inspect same. The defendant strenuously argued that *People v. Hitch* (1974), 11 Cal. 3d 159, 520 P. 2d 974 applies. In that case, it was held that the destruction of the test ampoule, even done non-maliciously, deprives the defendant of due process [in that the defendant is unable, by reason of such destruction: (1) to determine how much volume of fluid the ampoule contained; (2) to determine how high in the ampoule the test fluid rose, (3) to determine any optical variances in the glass ampoule and thickness of ampoule, (4) to determine if the test fluid met the design specification relative to the chemistry of the test fluid, (5) to subsequently analyze the fluid after the actual test, and (6) in general, deprives defendant thereby of due process in determining the accuracy of the test].

However, the *Hitch* court, on rehearing, 12 Cal. 3d 641, 527 P. 2d 361, reversed its prior order suppressing the results of the breathalyzer test and stated that hereafter, in California, test ampoules are required to be retained.

Basically the question resolves itself into a determination of whether or not Ohio law provides safeguards in its law regarding the breathalyzer (R. C. 4511.19). It is the opinion of this court that it does.

No useful purpose can be served here by a review of the

evidence on the testimony given at the hearing herein, except to comment on certain selected items. Further, the court is given no guidelines by other decisions in Ohio. We are driving an uncharted course and without lighthouse, buoy or other navigational device. Judge Golden of the Columbus Municipal Court, it is true, has ruled in a similar case, but his opinion was oral, and is not reported.

R. C. 4511.19, provides that:

"In any criminal prosecution for a violation of this section, or ordinance of any municipality relating to driving a vehicle while under the influence of alcohol, the court may admit evidence on the concentration of alcohol in the defendant's blood at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of such alleged violation. When a person submits to a blood test at the request of a police officer under Section 4511.191 of the Revised Code, only a physician or a registered nurse shall withdraw blood for the purpose of determining the alcoholic content therein. This limitation does not apply to the taking of breath or urine specimens. Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to Section 3701.143 of the Revised Code. * * *"

R. C. 3701.143 provides for such procedure: "The Director of Health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's blood, urine, breath, or other bodily substance in order to ascertain the amount of alcohol in a person's blood. The director shall approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses. Such permits shall be subject to termination or revocation at the discretion of the director."

Pursuant to that section, the Director of Health promulgated its Alcohol Testing, Approval, and Permit Program, Chapter HD-1. Regulation HD-1-04 provides for calibration

of breath-testing instruments thereby establishing a safeguard. HD-1-02 approves the breathalyzer. HD-1-07, -08, and 09 provide for the qualifications of personnel, proficiency tests and the issuance of permits. In HD-1-04, log books are required to be maintained.

In addition, the Director of Health has promulgated a "General Manual for the Breathalyzer, its Operation, Care and Maintenance," published in accordance with HD-1.

But what about the test ampoule and its contents? The Director of Health has set up standards for the test ampoule and its contents by adopting the standards and specifications of the designer and manufacturer. Routinely, the Department of Health samples fluid batches to insure uniformity and that standards and specifications thus established are complied with. Where does it end? This court holds that it ends there. The Legislature has permitted the Department of Health to establish standards which are of public record and knowledge. To require that the test ampoule be retained by the testing permitholder after a test is to place an additional burden on the state, not required by the Legislature. This is not to suggest that the defendant might not inquire of the operator the contents of the ampoule or to raise these doubts to the court or jury, but it is not required that the ampoule be retained.

The safeguards have been established. 1 Kent, Commentaries on American Law, 462, states that (with respect to construction of statutes), "The intentions to be taken or presumed according to that which is consonant with reason and good discretion." Ohio has followed that proposition. *In re Miller* (1901), 8 N. P. 142, 11 O. D. 69; affirmed, 21 C. C. 445; reversed on other grounds, 65 Ohio St. 170. This court agrees. Motion to suppress overruled.

*Motion overruled.*