(605 P 2d 159)

No. 51,026

STATE OF KANSAS, *Appellant,* v. ARWIT RAYMOND MEZINS, *Appellee.*

Petition for review denied March 14, 1980.

Opinion filed January 18, 1980.

*Robert H. Gale, Jr.,* assistant district attorney, *Dennis W. Moore,* district attorney, and *Robert T. Stephan,* attorney general, for the appellant.

*L. Wesley Nichols,* of Overland Park, for the appellee.

Before FOTH, C.J., SPENCER and PARKS, JJ.

PARKS, J.: This is an interlocutory appeal taken by the State pursuant to K.S.A. 1978 Supp. 22-3603, from an order granting defendant's motion to suppress the results of a blood test.

Trooper Stackhouse of the Kansas Highway Patrol arrived at an accident scene on January 18, 1979, to find a car stuck in a snowbank. He was informed by a "good Samaritan," who stopped to lend assistance, that defendant Arwit Mezins was the only person who got out of the car. Defendant, however, stated he was only a passenger and that his friend, Jerry, was the driver of the vehicle. The physical evidence at the scene—one set of footprints in the snow by the wrecked vehicle and condensation on the driver's side of the floorboard—also indicated that the defendant was alone in the car. The officer observed Mezins to have a strong odor of alcohol, slurred speech and coordination difficulty, leading him to believe defendant was intoxicated. After Mezins was transported to the hospital, Stackhouse placed him under arrest, informed him of his *Miranda* rights, and requested a blood sample. Defendant signed a consent form and a blood sample was taken by a physician. A later analysis revealed a .27

percent blood alcohol content by weight. When advised that defendant was to be admitted to the hospital, Stackhouse testified that he "unarrested" the defendant and asked the hospital staff to notify the Kansas Highway Patrol when defendant was released because there would be charges pending against him. On January 23, 1979, Trooper Stackhouse picked up the defendant at the hospital and transported him to jail where he was charged with felony theft (this charge was later dismissed) and driving under the influence of intoxicating liquor (K.S.A. 1978 Supp. 8-1567). Without stating its reasons, the trial court sustained defendant's motion to suppress the results of the blood test. From this ruling the State appeals.

Although neither party has raised the issue, we note that the district court failed to make findings of fact and conclusions of law pursuant to Rule 165 of the Supreme Court and K.S.A. 60-252 when it sustained defendant's motion to suppress evidence. Although we are reversing this decision on other grounds, we remind the district court of its obligation to make adequate findings of fact and conclusions of law in future hearings. Since the trial court failed to state its reason for granting defendant's motion to suppress, we shall consider the merits of each of the arguments asserted by defendant.

The governing statute in this case is K.S.A. 1978 Supp. 8-1001(*a*) and (*c*), which provides in part:

"(a) Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given consent to submit to a chemical test of breath or blood, for the purpose of determining the alcoholic content of his or her blood whenever he or she shall be arrested or otherwise taken into custody for any offense involving operating a motor vehicle under the influence of intoxicating liquor in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to arrest the person was driving under the influence of intoxicating liquor. The text shall be administered at the direction of the arresting officer   .   .   .   .

"(c) If the person so arrested refuses a request to submit to a test of breath or blood, it shall not be given and the arresting officer shall make to the division of vehicles of the state department of revenue a sworn report of the refusal, stating that prior to the arrest the officer had reasonable grounds to believe that the person was driving under the influence of intoxicating liquor. Upon receipt of the report, the division immediately shall notify such person of his or her right to be heard on the issue of the reasonableness of the failure to submit to the test   .   .   .   ."

Defendant contends that an arresting officer has a duty to inform an accused of his right to refuse a blood alcohol test, and failure to do so renders the test results inadmissible. In *Hazlett v.*

*Motor Vehicle Department,* 195 Kan. 439, 442, 407 P.2d 551 (1965), our Supreme Court considered a similar question of whether an arresting officer is required to explain the *consequences* of a refusal to submit to a blood alcohol chemical test. In holding that no such duty existed, the Court noted:

"In the first place a careful scrutiny of the statute K.S.A. 8-1001 . . . fails to reveal any mandate directing the arresting officer to inform the accused of the consequences of refusal."

We, like the Supreme Court, are reluctant to write something into the statute not included by the legislature. We conclude that there is no statutory authority compelling an arresting officer to inform a motorist of his right to refuse a chemical test under K.S.A. 1978 Supp. 8-1001.

Defendant also argues that the test results were the product of an involuntary consent and therefore inadmissible. K.S.A. 1978 Supp. 8-1001 provides that a person who operates a motor vehicle shall be deemed to have given consent to submit to a chemical test upon the occurrence of several contingencies. The provisions of the statute become operative only after a person is arrested or otherwise taken into custody. *Before arrest,* a person may voluntarily agree to a blood test but is free to refuse. *State v. Gordon,* 219 Kan. 643, 647, 549 P.2d 886 (1976). In the present case, the parties stipulated that defendant was arrested and given his *Miranda* warnings prior to signing the consent form and receiving the blood test. There is no contention that defendant was unconscious or incapable of making a voluntary response to Officer Stackhouse's request to submit to the blood alcohol test. See *State v. Garner,* 3 Kan. App. 2d 697, 600 P.2d 1166 (1979).

We interpret the "implied consent statute," K.S.A. 1978 Supp. 8-1001, to mean that once a person is arrested and requested to submit to a test the overriding issue becomes whether the person *refuses* such a request. The statute operates so as to provide the requisite consent to the test in the event the accused fails to invoke his refusal right. What constitutes a refusal must depend upon the facts of each case. Here the only evidence which suggests such a refusal was that defendant at first seemed apprehensive; however, he ultimately said "why not" and signed the consent form. Because defendant consented, impliedly by statute and in writing, we cannot say that defendant refused the test within the meaning of the statute.

The final issue presented is whether Officer Stackhouse's "unarrest" of defendant voided the initial arrest thereby rendering the seizure of defendant's blood inadmissible. Stackhouse testified that if defendant remained in the hospital under arrest he would have to be under continuous guard; his reason for "unarresting" defendant was to obviate the requirement for a guard. It is clear Stackhouse did not inform defendant of the "unarrest" but requested hospital authorities to notify the patrol of defendant's release. It is equally clear that Stackhouse still had reason to believe defendant had committed the crime at the time of the "unarrest"; therefore K.S.A. 22-2406 would not, as defendant would have us believe, be applicable.

Here the blood sample was taken incidental to defendant's valid arrest and consent. What took place later had no bearing upon that arrest or the admissibility of the chemical test. In an analogous situation the Court in *People v. Superior Court In and For the County of San Mateo,* 35 Cal. App. 3d 1, 6, 110 Cal. Rptr. 504 (1973), said that the failure to maintain close police custody over a hospitalized suspect, or to place a police hold on him, did not reasonably or retroactively affect the validity of an otherwise lawful arrest at the accident scene. We agree with that ruling and hold that Officer Stackhouse's statement that he "unarrested" defendant did not vitiate the legality of defendant's arrest or the results of the blood test.

We conclude that the suppression of the results of defendant's blood test was erroneous.

Judgment is reversed.