No. 51,726

STATE OF KANSAS, *Appellant,* v. ROBERT B. YOUNG, *Appellee.*

(614 P.2d 441)

Opinion filed July 18, 1980.

*Larry D. Ehrlich,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellant.

*Michael S. Holland,* of Russell, argued the cause and was on the brief for the appellee.

*Max G. Moses,* executive director of Kansas County & District Attorneys Association of Topeka, and *Frank Yeoman,* of Topeka, were on the *amicus curiae* brief.

The opinion of the court was delivered by

FROMME, J.: The State filed an interlocutory appeal from an order suppressing evidence of the result of a gas chromatograph intoximeter test in an action filed against the defendant, Robert B. Young, for driving while under the influence of intoxicating liquor (DWI). This interlocutory appeal by the State is authorized by K.S.A. 1979 Supp. 22-3603. The district court on defendant's motion to suppress, among other things, found:

"1. That there is no substantial cost to the State of Kansas by way of time or

money to make a sample of breath available to the defendant when the breath samples are taken for alcohol testing with the testing to be later done.

"2. [Not pertinent.]

"3. Concerning the supplemental proposition as to whether or not it should be the duty of the defendant to request a sample or whether it should be the duty of the State to advise the defendant that a sample of the defendant's breath will be made available to him if the defendant wants one, the Colorado decision is persuasive. [*Garcia v. Dist. Court, 21st Jud. Dist.,* 197 Colo. 38, 589 P.2d 924 (1979).]

"4. [Not pertinent.]

"5. It becomes the State's obligation just as it is a State obligation for example to furnish the Miranda warning without being requested by the defendant to be advised of his rights and as a practical matter when you put the obligation on the State the underlying principle here stated will be carried out.

"6. That said decision above set forth relates only to breath samples taken for the purpose of later testing. It does not relate to direct breath testing by the subject breathing directly into a machine.

"7. That the defendant's motion to suppress the results of said gas chromatograph intoximeter test and/or results of said breathalyzer test is granted and that said results are suppressed."

We note at the outset, contrary to the inference created by the court's finding number seven (7), that no Breathalyzer test was administered in this case. The test given made use of an Intoximeter Mark IV machine, which is a gas chromatograph test machine. Some of the pertinent differences in the two machines will be covered later.

Before exploring the primary question presented, a preliminary question should be answered. The defendant states that the parties stipulated before the hearing on the motion to suppress that the factual issue to be determined by the trial court was whether or not a substantial expenditure of time or money would be involved in collecting an extra sample of defendant's breath for defendant's use and independent testing. The defendant indicates it was agreed by both sides that the evidence of the test result should be suppressed if no substantial expenditure of time or money would be required of the State in furnishing defendants in DWI cases extra breath samples.

When the facts material to a decision of the court on a motion to suppress evidence are not in dispute the question of whether to suppress becomes a question of law. Points of law pertaining to a case are to be determined judicially regardless of whether the controlling law has been settled by agreement between the parties litigant. *Mobile Acres, Inc. v. Kurata,* 211 Kan. 833, 839, 508 P.2d

889 (1973). It has frequently been said decisions on questions of law must rest upon the court, uninfluenced by law stipulations by the parties. Accordingly stipulations of the parties litigant as to what the law is are ineffective and not controlling on the court. *Urban Renewal Agency v. Reed,* 211 Kan. 705, 712, 508 P.2d 1227 (1973). It is only agreements and admissions as to fact which are within the authority of the parties litigant or their attorneys. A court may not be bound by agreements and admissions of the parties as to matters of law or legal conclusions. *In re Estate of Maguire,* 204 Kan. 686, 691, 466 P.2d 358 (1970).

Therefore neither the trial court nor this court on appeal is bound by the agreement of these parties that the blood alcohol test should be suppressed on a finding the costs of furnishing an extra breath sample to a defendant would be negligible. It is not clear to this court what the cost of an extra breath sample has to do with defendant's constitutional right to due process. If defendant's constitutional right to due process requires that defendant be furnished a sample of his breath for independent testing, the cost thereof cannot be the single controlling factor. The trial court was correct in not limiting its decision to the single question of cost.

Before turning to the primary question it might be helpful to set out some preliminary information on breath testing. There are many different types of machines to test the blood alcohol content by breath used in the United States. In Kansas four types of machines are in use according to the brief of *amicus curiae.* The brand names are—Intoximeter Mark IV, Intoxilizer, Alco Analyzer and Breathalyzer. The machine used in the present case was the Intoximeter Mark IV, which makes use of a gas chromatograph intoximeter test. All machines presently in use in the State of Kansas must be certified for use periodically by the Kansas Department of Health and Environment. Each machine must be certified or any test result from such machine is not admissible in court.

The Intoximeter Mark IV used in this case will test breath blown directly into the machine. It is also equipped for indirect breath input. The indirect method, which was used in the present case, involves the use of what is referred to as an indium tube for capturing breath at the scene of an arrest. The indium tube is a soft metal device used to capture and preserve a breath sample for

later examination and analysis in the Intoximeter Mark IV machine. The tube originally is a single piece but when the breath sample is blown into the tube, the tube can then be crimped to hold the sample breath in three separate compartments. The breath in each compartment can then be tested separately. These containers containing a breath sample are delivered to those locations in the state where the Intoximeter Mark IV testing machines are maintained. The required practice in Kansas is to test all three samples available in each indium tube. The triple testing maintains scientific reliability. The testing process totally expends or uses up the breath sample tested. Testing of only one of the three compartment samples is not regarded as scientifically acceptable or valid. The Kansas Highway Patrol uses the system of indirect breath input with the Intoximeter Mark IV machine. The highway patrol has some 300 indium capturing units and only eight of the Intoximeter Mark IV analyzing units.

Another type of machine which appears to be in use in a considerable number of states including Kansas is known as the Breathalyzer. This machine makes use of an entirely different method of testing the breath. The person being tested blows directly into the machine. The rationale of this chemical test is dependent on the reaction of hydrocarbon breath contents to potassium dichromate in a sulfuric acid solution contained in a test ampoule to induce and record color changes. These color changes in the dichromate are then measured and through internal machine mechanisms the result is presented as a blood alcohol percent. 2 Erwin's Defense of Drunk Driving Cases p. 22-2.1 (3d ed. 1979). Accordingly, the reliability of the test depends on the proper amount and mixture of chemicals in test ampoules. The breath of the person tested is blown directly into the machine, interacts with the chemicals, and is used up or expended in making the test.

The principle of gas chromatography breath testing, as when the Intoximeter Mark IV is used, is quite different from that of the Breathalyzer. The main function of the intoximeter is to separate the alcohol in the breath sample and measure its amount. Separation is achieved by a suitable absorption column, and measurement is by a flame ionization detector. The separated ethyl alcohol passes into the flame ionization detector where the burning of the alcohol creates an electronic signal. An amplifier

magnifies this signal which then activates a recorder and digital readout component. 2 Erwin's Defense of Drunk Driving Cases p. 23-8.3.

We turn now to the primary question in this case. Is it the State's obligation to furnish a person accused of driving while under the influence of intoxicating liquor (DWI) with an extra breath sample for his own testing procedures?

There are several sections of Kansas statutes bearing on the questions presented in this case. K.S.A. 1979 Supp. 8-1005 provides:

"(a) In any criminal prosecution for violation of the laws of this state relating to driving of a motor vehicle while under the influence of intoxicating liquor, or the commission of vehicular homicide or manslaughter while under the influence of intoxicating liquor, or in any prosecution for a violation of city ordinance relating to the driving of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the defendant's blood at the time alleged, as shown by chemical analysis of the defendant's blood, urine, breath or other bodily substance may be admitted and shall give rise to the following presumptions:

"(1) If there was at that time less than 0.10 percent by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was not under the influence of intoxicating liquor;

"(2) If there was at the time 0.10 percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.

"(b) For the purpose of this section, percent by weight of alcohol shall be based upon grams of alcohol per one hundred (100) milliliters of blood."

It is noted that under this statute evidence of the amount of alcohol in the defendant's blood at the time of the specific violations listed in the statute may be shown by chemical analysis of defendant's breath as well as blood and other body substances. This court has recognized the use of chemical tests to determine blood alcohol content by breath analysis. *City of Abilene v. Hall,* 202 Kan. 636, 451 P.2d 188 (1969).

The next statute to be considered is K.S.A. 1979 Supp. 8-1001 which in pertinent part reads:

"(a) Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given consent to submit to a chemical test of breath or blood, for the purpose of determining the alcoholic content of his or her blood whenever he or she shall be arrested or otherwise taken into custody for any offense involving operating a motor vehicle under the influence of intoxicating liquor in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to arrest the person was driving under the influence of intoxicating liquor. The test shall be administered at the direction of the arresting officer."

In this statute provision is made for taking a chemical test of breath or blood. The later provisions in this statute regulate the withdrawal of blood, specify the persons authorized to do so, and grant such persons immunity from liability when such act is performed in a reasonable manner in accordance with generally accepted medical standards. The final provision outlines the rights of a defendant on refusal to submit to such test.

The final statutory provision pertinent to our present case is K.S.A. 8-1004 which provides:

"Without limiting or affecting the provisions of K.S.A. 8-1001 to 8-1003, the person tested shall have a reasonable opportunity to have an additional chemical test by a physician of his or her own choosing. In case the officer refuses to permit such additional chemical test to be taken, then the original test shall not be competent in evidence."

The Court of Appeals in *City of Shawnee v. Gruss,* 2 Kan. App. 2d 131, 576 P.2d 239, *rev. denied* 225 Kan. 843 (1978), held that under the latter statute a Breathalyzer test operator is not required to inform the person being tested of his right to have an independent test taken by some other authorized person or agency. This holding was based largely on this court's decision in *Hazlett v. Motor Vehicle Department,* 195 Kan. 439, Syl. ¶ 1, 407 P.2d 551 (1965), which holds:

"Under the provisions of K.S.A. 8-1001 and related statutes, there is no duty placed on an arresting officer, making an arrest for the offense of driving while under the influence of intoxicating liquor, to explain the consequences of a refusal to submit to a blood alcohol chemical test."

In *Hazlett* the court was impressed with the rule that all persons are presumed to know and are bound to take notice of general public laws of the state where they reside, as well as the legal effect of their acts. In *State v. Mezins,* 4 Kan. App. 2d 292, 294, 605 P.2d 159, *rev. denied* 227 Kan. 928 (1980), the Court of Appeals concluded there is no statutory authority or rule of law compelling an arresting officer to inform a motorist of his right to refuse a chemical blood test under K.S.A. 1979 Supp. 8-1001. We believe the decision of the Court of Appeals is sound.

The cases on the present subject from other states are not too helpful on the primary question. Several of the cases such as *State v. Michener,* 25 Or. App. 523, 550 P.2d 449 (1976), *Scales v. City Court of Mesa,* 122 Ariz. 231, 594 P.2d 97 (1979), and *People v.*

*Hitch,* 12 Cal. 3rd 641, 117 Cal. Rptr. 9, 527 P.2d 361 (1974), have excluded the test results of the Breathalyzer as a sanction against the State for failure to preserve the test ampoule, its contents, and the reference ampoule used in a Breathalyzer test. These courts have held these items constitute material evidence on the issue of the driver's guilt or innocence. The courts seem to rely in these cases on *Brady v. Maryland,* 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194 (1963). In *Brady* the high court held the suppression by the State of an accomplice's confession violated the due process clause of the Fourteenth Amendment. The prosecution in *Brady* had refused the request of Brady's counsel to examine an accomplice's extrajudicial statement admitting the crime. A new trial was ordered on the question of punishment only.

We have held in accordance with the thrust of the *Brady* decision that prosecutors are under a positive duty, independent of court order, to disclose exculpatory evidence to a defendant. *State v. Kelly,* 216 Kan. 31, 531 P.2d 60 (1975). However, such cases hardly seem applicable to the facts of our present case.

Assuming *arguendo* that the test ampoule and reference ampoule used in a particular Breathalyzer test should be made available to each defendant, no test ampoule or reference ampoule is used when the gas chromatography method is employed. Using the Intoximeter Mark IV machine the breath sample is used up or expended in the testing process and is no longer available. Therefore, the prosecution cannot be accused of failing or refusing to disclose exculpatory evidence to the defendant which does not exist. There never is a test ampoule or reference ampoule used in the gas chromatography test. The test result in this case of 0.20 percent by weight of alcohol in the defendant's blood was made known to defendant. In addition the result of the test was inculpatory and cannot be considered exculpatory evidence. There was no attempt by defendant to show the test result was unreliable or it did not comport with coordination and speech tests.

This court holds in *State v. Lightle,* 210 Kan. 415, 502 P.2d 834 (1972), *cert. denied* 410 U.S. 941 (1973), that it is not error to refuse to suppress tests made on two pills identified as "Dilaudid" when the pills have been used up and expended in the testing process and the State could not produce the pills for independent testing by the defendant. This court said:

"A request [to produce] is hardly reasonable if the object has ceased to exist by

reason of valid conduct bringing about its nonexistence, such as for the making of a necessary chemical analysis. Other examples come to mind such as a blood or breath test to determine intoxication, or analysis of minute particles of any kind." 210 Kan. at 416.

There are cases from other jurisdictions, such as *Baca v. Smith,* 124 Ariz. 353, 604 P.2d 617 (1979), and *Garcia v. Dist. Court, 21st Jud. Dist.* 197 Colo. 38, 589 P.2d 924 (1979), which holds a defendant accused of DWI must be advised at the time of the arrest that he or she is entitled to a second sample of breath to be used for independent testing and on request the State is required to furnish an extra sample of the breath of an accused. It appears somewhat strange, however, that the State should be required to anticipate defense strategy, obtain a breath sample, and pay for part of the expense of a second test for the accused's use prior to entry of his plea. The basis for this requirement in these cases is not well defined. These courts seem to be aware that other courts do not require an extra sample. They hold in a general way, however, that it is incumbent on the State to employ regular procedures to preserve evidence for the defendant. They require a State agent, in the regular performance of his duties, to reasonably foresee what evidence "might be favorable to the accused" and to obtain and preserve the same for defendant's use. *Baca v. Smith,* 124 Ariz. at 355. The difficulty of accepting this logic in the present case is apparent. The item in question here is merely a sample of breath from the accused himself, which he alone can furnish for independent testing by his own physician as authorized by K.S.A. 8-1004. As evidence, the defendant's breath can hardly be equated with an unchanging physical object which is relevant evidence.

There are also other cases such as *State v. Grose,* 45 Ohio Misc. 1, 340 N.E.2d 441 (1975), and *State v. Teare,* 135 N.J. Super. 19, 342 A.2d 556 (1975), which hold that the question of whether to require the State to preserve test ampoules resolves itself into a determination of whether proper safeguards are present in the law of the particular state to assure reasonably accurate test results. In these cases preservation of ampoules is not required. After a test has been properly administered and analyzed by a qualified individual approved by the Director of Health or some such agency, destruction of test ampoules has been held not a denial of due process of law.

In Kansas we believe the statutes previously quoted provide

proper safeguards to assure reasonably accurate test results and to enable the accused, on request, to secure any additional chemical test by a physician of his or her own choosing, which the accused may desire. See K.S.A. 8-1004. The language of the Kansas statutes is clear. K.S.A. 1979 Supp. 8-1005 provides that evidence of the amount of alcohol in the defendant's blood at the time he is alleged to have been DWI as shown by chemical analysis of the defendant's breath may be admitted in evidence at trial. Under K.S.A. 1979 Supp. 8-1001 any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given consent to submit to a chemical test of breath. *State v. Garner,* 227 Kan. 566, 608 P.2d 1321 (1980). If the person arrested refuses a request to submit to the test, the test shall not be given. The arresting officer makes a sworn report of the refusal, a due process hearing is provided, and thereafter the person's driver's license is lifted unless reasonable grounds for refusal are established. Under K.S.A. 8-1004 the accused shall be given a reasonable opportunity to have his or her own physician administer an additional chemical test. If the arresting officer refuses to afford the accused this right on request, the original test may not be used in evidence against the accused.

Under the safeguards built into K.S.A. 1979 Supp. 8-1001, K.S.A. 8-1004 and K.S.A. 1979 Supp. 8-1005, the failure of the State to automatically furnish an accused with a sample of his own breath for independent testing is not a denial of due process. The plain wording of K.S.A. 8-1004 gives the person tested for blood alcohol content the right to obtain, on request, an additional chemical test by a physician of his or her own choosing, and it is not an obligation of the State to advise the person of this statutory right. In the absence of any request by the defendant in this case to obtain an additional chemical test by a physician of his own choosing, it was error for the trial court to suppress evidence of the results of a gas chromatograph intoximeter test as a sanction for the State's failure to make a sample of defendant's breath available to the defendant.

The order suppressing the test result is reversed and the case is remanded for further proceedings.