No. 50,470

STATE OF KANSAS, *Appellant,* v. JOE F. GARNER, *Appellee.*

(608 P.2d 1321)

Opinion filed April 5, 1980.

*Mickey W. Mosier,* assistant county attorney, argued the cause and *Curt T. Schneider,* attorney general and *Wm. Rex Lorson,* county attorney, were with him on the brief for the appellant.

*James L. Sweet,* of Sweet & Boyer, of Salina, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an interlocutory appeal by the State of Kansas pursuant to K.S.A. 22-3603. Defendant, Joe F. Garner, is charged with driving while under the influence of intoxicating liquor (K.S.A. 1979 Supp. 8-1567); transporting an open container of intoxicating liquor (K.S.A. 41-804); and not having a valid driver's license on his person (K.S.A. 8-244). The State appealed the order of the trial court suppressing the results of a breath test to determine the defendant's blood alcohol level. The Court of Appeals reversed the trial court and found the defendant was not entitled to suppress the results of the breath test. *State v. Garner,* 3 Kan. App. 2d 697, 600 P.2d 1166 (1979). We granted review and affirm the Court of Appeals.

This case arose from the following facts. On May 6, 1978, at 12:55 p.m. Saline County deputy sheriff John D. Myers stopped a car driven by Joe F. Garner as it proceeded down Broadway in Salina. Myers had followed Garner for about one and one-half blocks, observing the car weave from one side of the street to the other. After Myers stopped Garner he approached his car. Defendant remained seated and appeared to be asleep or dazed. Over one-half of one side of his face was bruised with black and blue coloration and there was a strong odor of intoxicating liquor about the defendant and his car. Myers arrested Garner, gave him the *Miranda* warning, and then attempted to have him perform

the standard coordination tests. Defendant could not perform any of the three tests satisfactorily. Myers had to catch him to prevent him from falling during two of the tests. While awaiting the arrival of the wrecker, Myers asked Garner if he would submit to a breath test. The defendant readily consented and blew into the apparatus. The test disclosed he had a .30% content of alcohol in his blood. Defendant testified he remembered nothing about being stopped, arrested or questioned or the taking of the breath test. The trial court ruled the officer performed the breath test on the defendant without his free and voluntary consent and without a valid search warrant. The appeal followed.

The sole issue before us is whether the trial court erred in suppressing the results of the defendant's breath test because defendant, an incapacitated driver, was physically unable to freely and voluntarily refuse the request.

K.S.A. 1977 Supp. 8-1001 was in effect at the time this case arose. In 1978, the statute was amended to exclude the testing of urine and saliva under the statute. In addition, the amendment added sections (b)(2) and (3) regarding persons authorized to withdraw the blood. L. 1978, ch. 36, § 1. Neither amendment affects the issues in this case; therefore the statute will be cited in its current form. K.S.A. 1979 Supp. 8-1001 provides as follows:

(a) "Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given consent to submit to a chemical test of breath or blood, for the purpose of determining the alcoholic content of his or her blood whenever he or she shall be arrested or otherwise taken into custody for any offense involving operating a motor vehicle under the influence of intoxicating liquor in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to arrest the person was driving under the influence of intoxicating liquor. The test shall be administered at the direction of the arresting officer.

(b) "If a law enforcement officer requests the arrested person to submit to a chemical test of blood, the withdrawal of blood at the direction of the officer may be performed only by: (1) a person licensed to practice medicine and surgery or a person acting under the supervision of any such licensed person, (2) a registered nurse or a licensed practical nurse, or (3) any qualified medical technician. No person authorized by this subsection to withdraw blood, nor any person assisting in the performance of a blood alcohol test or any hospital wherein such blood is withdrawn or tested that has been directed by any law enforcement officer to withdraw or test blood shall be liable in any civil or criminal action when such act is performed in a reasonable manner according to generally accepted medical practices in the community where performed. No law enforcement officer who is acting pursuant to this section shall be liable for such action in any civil or criminal proceeding involving such action.

(c) "If the person so arrested refuses a request to submit to a test of breath or blood, it shall not be given and the arresting officer shall make to the division of vehicles of the state department of revenue a sworn report of the refusal, stating that prior to the arrest the officer had reasonable grounds to believe that the person was driving under the influence of intoxicating liquor. Upon receipt of the report, the division immediately shall notify such person of his or her right to be heard on the issue of the reasonableness of the failure to submit to the test. If, within twenty (20) days after receipt of said notice, such person shall make written request for a hearing, the division shall hold a hearing within the time and in the manner prescribed by K.S.A. 8-255. Notice of the time, date and place of hearing shall be given to such person by restricted mail, as defined by K.S.A. 60-103, not less than five (5) days prior to the hearing. If a hearing is not requested or, after such hearing, if the division finds that such refusal was not reasonable, and after due consideration of the record of motor vehicle offenses of said person, the division may suspend the person's license or permit to drive or nonresident operating privilege for a period of not to exceed one (1) year."

K.S.A. 1979 Supp. 8-1001(a) provides for implied consent and section (c) provides that no test shall be given if the person so arrested refuses a request to submit. Do those provisions include an "unconscious or incapacitated driver?" The State argues the test result is admissible in the absence of the driver's refusal, for whatever cause, even to the extent of being unconscious. The defendant argues the statute grants a right of refusal which is rendered meaningless when the driver is incapable of exercising his right and the evidence is inadmissible.

Many states have implied consent statutes, some of which have unconscious or incapacitated driver provisions, such as:

Ala. Code § 32-5-192(b)

Ariz. Rev. Stat. Ann. § 28-691(c)

Cal. Veh. Code § 13353(a) (West 1979 Supp.)

Del. Code Ann. tit. 21, § 2747

Fla. Stat. Ann. § 322-261(c) (West)

Hawaii Rev. Stat. § 286-154

Ill. Ann. Stat. ch. 95 ½, § 11-501(e) (1979 Supp.)

Iowa Code Ann. § 321B.5 (West)

Ky. Rev. Stat. § 186.565(2) (1978 Supp.)

La. Rev. Stat. Ann. § 32:661B (West 1979 Supp.)

Mont. Rev. Codes Ann. § 32-2142.1(b) (1977 Supp.)

Neb. Rev. Stat. § 39-669.10

Ohio Rev. Code Ann. § 4511.191 (Page 1979 Supp.)

Tenn. Code Ann. § 59-1045 (1979 Supp.)

Vt. Stat. Ann. tit. 23, § 1202(a)

Wis. Stat. Ann. § 343.305(1)

The following states, like Kansas, have implied consent statutes which do not provide for the unconscious driver:

Alaska Stat. §§ 28.35.031, 28.35.032, 28.35.033 and 28.35.034
Conn. Gen. Stat. §§ 14-227a, 14-227b
Idaho Code § 49-352 (1979 Supp.)
Ind. Code Ann. § 9-4-4.5-4 (Burns 1979 Supp.)
Me. Rev. Stat. Ann. tit. 29 § 1312 (See also 1979-1980 Supp.)
Md. Transp. Code Ann. § 16-205.1 (1979 Supp.)
Mass. Ann. Laws ch. 90, § 24 (See also 1979 Supp.)
Mich. Stat. Ann. § 9.2325 *et seq.*
Minn. Stat. Ann. § 169.123 (West 1980 Supp.)
Okla. Stat. Ann. tit. 47, § 751 *et seq.* (West 1979 Supp.)

Let us examine the decisions from states with implied consent statutes similar to our own. In *State v. Wood,* 576 P.2d 1181, 1183 (Okla. Crim. 1978), the Oklahoma court construed its implied consent statute to mean:

"[A] person driving on the public roads gives his implied consent to a blood test in the event that he is rendered unconscious as a result of an automobile collision, and the police have probable cause to believe that he was driving while intoxicated."

The Oklahoma court found the person whose blood or breath is taken while unconscious must be afforded the right to revoke the consent upon regaining consciousness. The Oklahoma court treated the refusal provision as a "right," qualifying the implied consent provision of the statute.

In *State v. Towry,* 26 Conn. Supp. 35, 210 A.2d 455 (1965), the Connecticut Supreme Court held the implied consent statute did not specifically authorize the taking of blood from an unconscious driver; therefore, the State was required to prove the defendant consented to the test in order for the results to be admissible.

The Idaho Supreme Court reached yet another result in *Mills v. Swanson,* 93 Idaho 279, 280, 460 P.2d 704 (1969), wherein the court stated:

"The principal issue in this case is whether under these facts silence in response to a request to submit to a chemical test of the blood constitutes as a matter of law, a withdrawal of the statutorily granted consent to such test, thereby warranting suspension of a driver's license pursuant to I.C. § 49-352.

"This court in the case of *State v. Bock,* 80 Idaho 296, 308, 328 P.2d 1065, 1072 (1958), said:

'By operating a motor vehicle in this state the defendant is "deemed to have

given his consent to a chemical test." The only way he can withdraw that consent is to expressly refuse the test. So under our law if he neither refuses nor consents, expressly, the test may be made.'

"In the case at bar, the respondent did not at any time expressly refuse to take the test. Expressly means in direct or unmistakable terms."

The court went on to hold that the respondent's silence did not constitute an express refusal to take the test.

The foregoing cases illustrate a variety of interpretations courts have taken under statutes similar to ours. Subject to constitutional restraints, we are free to adopt the position we deem most appropriate to serve the public interest.

Let us now turn briefly to the constitutional questions raised by this case. In *Breithaupt v. Abram,* 352 U.S. 432, 1 L.Ed.2d 448, 77 S.Ct. 408 (1957), the court held an extraction of blood made by a physician in a hospital environment was not a violation of due process. *Breithaupt* distinguished the earlier case of *Rochin v. California,* 342 U.S. 165, 96 L.Ed. 183, 72 S.Ct. 205 (1952), which held the forcible use of a stomach pump was so unreasonable as to constitute a due process violation. In *Schmerber v. California,* 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966), the court was confronted with the constitutionality of the forced withdrawal of a blood sample by a physician from an unwilling defendant under arrest, done at a hospital under police direction. The court affirmed its holding in *Breithaupt* regarding the due process claim and found such a taking did not violate the privilege against self-incrimination or the right to counsel. The court further held a compulsory blood test directed by a state officer and performed upon the defendant after his arrest for drunken driving did not violate his right under the Fourth and Fourteenth Amendments to be free of unreasonable searches and seizures. The court held a warrantless search in this instance is justified where the delay necessary to obtain a warrant threatens loss of the evidence. Search and seizure implications with the taking of blood samples pursuant to *Schmerber* and the later case of *United States v. Dionisio,* 410 U.S. 1, 35 L.Ed.2d 67, 93 S.Ct. 764 (1973), were discussed by this court in *State v. Brunner,* 211 Kan. 596, 507 P.2d 233 (1973).

It is argued by appellee that K.S.A. 1979 Supp. 8-1001 grants to an accused a statutory right of refusal and since Garner was incapable of intelligently, knowingly and willingly exercising his right, the evidence so illegally obtained was properly suppressed. We do not agree.

It is well accepted that the operation of a motor vehicle on the public highways is a privilege, and not a right, subject to reasonable regulation under state police power in the interest of public safety and welfare. *Lee v. State,* 187 Kan. 566, 570, 358 P.2d 765 (1961); 7 Am. Jur. 2d, Automobiles and Highway Traffic § 6, p. 601. K.S.A. 1979 Supp. 8-1001, enacted to combat the increasing problem of drunken driving, provides for implied consent to a chemical test of breath or blood for the purpose of determining the intoxication level of one arrested for drunken driving. As this court stated in *Lee v. State,* 187 Kan. at 571:

"Chemical tests eliminate mistakes from objective observation alone, and they disclose the truth when a driver claims that he has drunk only a little and could not be intoxicated. They protect the person who has not been drinking to excess but has an accident and has the odor of alcohol on his breath. They save a person from a drunken driving charge when his conduct creates the appearance of intoxication but who actually is suffering from other causes over which he has no control."

The objectives of the statute are necessary and proper within the police power of the state. After the statute gives implied consent, it provides "if the person so arrested refuses a request to submit to a test of breath or blood, it shall not be given . . . ." What effect does this statute giving implied consent with right of refusal have on an unconscious driver? We have seen the statute is more restrictive than the constitution. The statute requires an accused be given the right to refuse the test and states the test shall not be given if refused. The constitution permits the taking of a blood or breath test as an incident to arrest, regardless of refusal under the conditions discussed above. If the unconscious driver, who is not mentioned in K.S.A. 1979 Supp. 8-1001, is exempt from the statute, then the evidence is clearly not rendered constitutionally inadmissible.

We find, however, notwithstanding the absence of constitutional inhibitions, the evidence is admissible pursuant to the statute itself. K.S.A. 1979 Supp. 8-1001 provides the operator of a vehicle on the highway is deemed to have consented to the blood or breath test for the privilege of driving. We find the unconscious driver is included in this classification and has consented to the test. The provision in 8-1001(*c*) permitting an operator to refuse is not a right of refusal, but was included in the statute as a means to avoid the violence which would often attend forcible tests upon a

rebellious drunk, and the operator may withdraw that consent by expressly refusing the test. If he fails to expressly refuse, the consent remains in force and the test may be made. See *Mills v. Swanson,* 93 Idaho 279. To hold otherwise would permit the worst offender, the passed-out drunk, to escape the provision of the statute by his own voluntary act.

In the case at bar, Garner did not expressly refuse to take the test. The test was, therefore, properly taken and the results are admissible. The judgment of the trial court is reversed and the judgment of the Court of Appeals is affirmed.