Thomas J. Drees Ellis County Attorney 1204 Fort Hays, Kansas 67601
Dear Mr. Drees:
You request our opinion regarding the authority of law enforcement officers to obtain blood samples under the provisions of K.S.A. 8-1001
from individuals who have refused to submit to a blood test. You direct our attention to the Kansas Supreme Court's recent decision in State v.Murry[2] and ask whether this case sanctions a warrantless extraction of a blood sample when there is probable cause to believe an individual has been driving under the influence of alcohol or drugs, but the individual has refused such testing.
The Court set forth the facts in the Murry case as follows:
"On April 25, 1999, Murry was driving his vehicle in Ellsworth County, Kansas. His vehicle left the roadway and crashed into a culvert embankment. Murry was trapped in the vehicle and could not extricate himself. His vehicle was `totaled.' Ellsworth County Deputy Sheriff Jaime Montoy was called to the scene of the accident. Montoy followed Murry to the Ellsworth County Hospital where he was transported by an EMT crew. Montoy suspected Murry had been driving while under the influence of alcohol. This issue has never been disputed. At the hospital, Montoy asked Murry to consent to a blood alcohol test. Murry replied, `I don't know what's going on, I'm starting to fade.' A sample of blood was taken from Murry, despite the lack of consent and despite the fact that he was not under arrest at the time."[3]
Apparently the trial court ruled that Murry had not consented to the taking of the blood sample and, because he had not been placed under arrest, a blood sample could therefore not be taken. The Supreme Court accepted the trial court's ruling on lack of consent without addressing that issue.[4] The focus of the arguments, and therefore of the decision of the Supreme Court, was whether K.S.A. 8-1001(b) required an arrest before a blood sample could be taken from a suspect who has not consented. The Supreme Court ruled that an arrest is no longer a necessary prerequisite to obtaining a blood sample under K.S.A. 8-1001(b) (where an accident or collision is involved),[5] and further held that a blood sample can be taken from a suspect without a warrant if the three-part test articulated in Schmerber v. California[6] has been met.[7] The constitutional test set forth in Schmerber does not include a requirement that the suspect be under arrest at the time the blood sample is taken.[8]
Thus, it does not appear that the issue you raise, propriety of a warrantless extraction of blood after a suspect refuses to consent, was addressed by the Court in Murry. As you note, the Court did not reference K.S.A. 8-1001(h) in its decision. That subsection of the statute provides as follows:
"(h) After giving the foregoing information, a law enforcement officer shall request the person to submit to testing. . . . If the person refuses to submit to and complete a test as requested pursuant to this section,additional testing shall not be given unless thecertifying officer has probable cause to believe thatthe person, while under the influence of alcohol ordrugs, or both, has operated a vehicle in such a manneras to have caused the death of or serious injury toanother person. . . ."[9]
K.S.A. 8-1001 further provides:
"(k) An officer shall have probable cause to believe that the person operated a vehicle while under the influence of alcohol or drugs, or both, if the vehicle was operated by such person in such a manner as to have caused the death of or serious injury to another person. In such event, such test or tests may be madepursuant to a search warrant issued under the authorityof K.S.A. 22-2502, and amendments thereto, or without asearch warrant under the authority of K.S.A. 22-2501,and amendments thereto."[10]
These provisions clearly state that if a suspect refuses to submit to testing under K.S.A. 8-1001, additional testing shall not be administered unless there is probable cause to believe that the suspect was operating a vehicle in such a manner as to have caused the death of, or serious injury to, another. The Kansas Supreme Court held in State v. Adee[11]
that these provisions create a statutory prohibition against compulsory testing of a person suspected of driving under the influence of alcohol or drugs.
"The Kansas implied consent law (K.S.A. 1986 8-1001) is premised, like those of the other states, on the theory that anyone who operates a motor vehicle upon public highways consents in advance to submission to a chemical test in order to determine the amount of alcohol in the driver's blood. See Note, The New Kansas DUI Law:Constitutional Issues and Practical Problems, 22 Wn.burn L.J. 340, 345 (1983) (prior consent to submit to chemical test the central feature of implied consent in all 50 states). The statute permits a driver to refuse to submit to the test. A refusal, however, triggers two-fold State action: temporary suspension of the driver's license, and admission of the refusal in evidence against the driver at any ensuing trial stemming from the alleged DUI incident. K.S.A. 1986 Supp. 8-1001(f).
. . . .
"In State v. Brunner, 211 Kan. 596, 602-03, 507 P.2d 233 (1973), we held that a compulsory blood alcohol concentration test for a person arrested for DUI was constitutionally permissible but statutorily prohibited.
"The statutory prohibition to compelled blood testing is found in K.S.A. 1986 Supp. 8-1001(f)(1)(E): `If the person refuses to submit to . . . a test as requested . . . additional testing shall not be given.' This provision is not construed to be a right of refusal but, rather, it was included in the statute `as a means to avoid the violence which would often attend forcible tests upon a rebellious drunk.' State v. Garner,227 Kan. 566, 571-72, 608 P.2d 1321 (1980). The statute was enacted to combat the increasing problem of drunk driving. State v. Garner,227 Kan. at 571, 608 P.2d 1321. Toward that end, the statute establishes the basic principle that a driver impliedly agrees to submit to a test in return for the privilege of using our public highways. If the driver withdraws that consent by refusing an appropriate test, the statute allows the State to withdraw, temporarily, the driver's privilege of using our public highways. K.S.A. 1986 Supp. 8-1002. In State v. Bristor,236 Kan. 313, 319, 691 P.2d 1 (1984), we said:
"`The very purpose of the implied consent law (K.S.A.8-1001) is to coerce a motorist suspected of driving under the influence to "consent" to chemical testing, thereby allowing scientific evidence of his blood alcohol content to be used against him in a subsequent prosecution for that offense. Prideaux v. State, Dept. ofPublic Safety, 310 Minn. [405] at 409-10, [247 N.W.2d 385
(1976)]. For drivers who refuse, the purpose of the statute is to provide an effective means short of physical force to overcome the refusal. State v. Garner,227 Kan. 566, 571-72, 608 P.2d 1321 (1980). The nonphysical means consist of the statutory penalties of license revocation and the admission into evidence in a DUI proceeding of the fact of the refusal. K.S.A. 8-1001(c). Under Standish [v. Department of Revenue, 235 Kan. 900,683 P.2d 1276 (1984)], the arrested defendant is to be informed of these consequences. This is a departure from our earliest cases. See, e.g., Hazlett v. Motor VehicleDepartment, 195 Kan. 439, 442, 407 P.2d 551 (1965); Cityof Shawnee v. Gruss, 2 Kan. App. 2d 131, 134,576 P.2d 239, rev. denied 225 Kan. 843 (1978). Thus, the consent envisioned by the statute is to be implied and if submission is not forthcoming it is to be coerced by knowledge and fear of adverse consequences.'"[12]
In Adee, the issue was whether a warrant could be obtained to compel extraction of blood when the suspect has refused to submit to testing. The Court said no. In State v. Brunner,[13] the circumstances involved a warrantless extraction of blood subsequent to a consent that was found by the Court to have been given under duress (thus ineffective). The Court held the blood evidence inadmissable. Neither of these cases was overruled by the Court in Murry.[14] Thus, it is our opinion thatMurry does not stand for the proposition that law enforcement officers are authorized to obtain a warrantless extraction of blood once a suspect has refused, pursuant to K.S.A. 8-1001, to consent to a blood test.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm
[2] Id.
[3] Murry, 271 Kan. at 224.
[4] It is difficult to determine why the issue of consent was not addressed. Some possibilities include: the Court views "refusal to consent" to require something more than not directly answering the request [but see Standish v. Department of Revenue, 235 Kan. 900, Syl. ¶ 2 (1984), In re Hamstead, 11 Kan. App. 2d 527, Syl. ¶ 1 (1986) and Lund v. Kansas Dept. of Revenue, 16 Kan. App. 2d 265, 267 (1991)]; once the suspect was rendered unconscious, any refusal or failure to consent was considered withdrawn; the facts fell within the exception to K.S.A. 8-1001(h); or the issue was not placed before the Court to decide.
[5] Murry, 271 Kan. at 225-26.
[6] 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
[7] Murry, 271 Kan. at 227.
[8] Id. at 233.
[9] K.S.A. 8-1001(h) (emphasis added).
[10] K.S.A. 8-1001(k) (emphasis added). See also K.S.A. 8-1001(f)(D) and K.S.A. 8-1002 (refusal will result in suspension or revocation of driving privileges); 8-1001(f)(G) and (i) (refusal may be used against the person at trial).
[11] 241 Kan. 825, 830-31 (1987).
[12] Adee, 241 Kan. at 829-31.
[13] 211 Kan. 596 (1973) (cited above in Adee quote).
[14] Murry did, however, disapprove language found in State v. Brunner
suggesting that an arrest is constitutionally required under the Fourth Amendment before a blood sample may be taken. 271 Kan. at 233.