OPINION ON REHEARING

IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,698

STATE OF KANSAS,
*Appellant*,

v.

DAVID LEE RYCE,
*Appellee*.

SYLLABUS BY THE COURT

K.S.A. 2016 Supp. 8-1025 is facially unconstitutional.

Appeal from Sedgwick District Court; GREGORY L. WALLER, judge. Original opinion filed 303 Kan. 899, 368 P.3d 342 (2016). Opinion on rehearing filed June 30, 2017. Affirmed.

*Natalie A. Chalmers,* assistant solicitor general, argued the cause, and *Derek Schmidt,* attorney general, was with her on the supplemental brief for appellant. *Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney*,* and *Derek Schmidt*, attorney general, were on the original brief for appellant.

*Patrick H. Dunn*, of Kansas Appellate Defender Office, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

LUCKERT, J.:  A Sedgwick County sheriff's deputy arrested David Lee Ryce and asked Ryce to submit to a breath test to determine his blood alcohol content. The deputy gave Ryce the written and oral notice required under Kansas' implied consent law, specifically K.S.A. 2016 Supp. 8-1001(k). Ryce refused testing, and the State charged him with violating K.S.A. 2016 Supp. 8-1025(a), which makes it a crime under certain circumstances to refuse "to submit to or complete a [blood alcohol content] test or tests deemed consented to under K.S.A. 8-1001(a)." In the district court and on appeal, Ryce challenged the constitutionality of 8-1025, leading to our decision in *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*). We agreed with Ryce's arguments and held the statute was facially unconstitutional because it punishes an individual for withdrawing his or her consent to a search, even though the right to withdraw consent has been recognized in cases applying the Fourth Amendment to the United States Constitution and § 15 of the Kansas Constitution Bill of Rights. 303 Kan. at 902-03.

After we issued our decision in *Ryce I*, the State timely filed a motion seeking to stay the mandate until the United States Supreme Court issued a decision in three consolidated cases addressing a similar issue regarding Minnesota and North Dakota statutes that made it a crime to refuse blood alcohol content testing. We granted that motion and, once the United States Supreme Court issued its decision in *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), allowed the parties to submit additional briefs and oral arguments.

After considering those additional arguments and the effect of *Birchfield* on *Ryce I*, we now, once again, determine that K.S.A. 2016 Supp. 8-1025 is facially unconstitutional. While *Birchfield* requires some modification of our analysis, nothing in

the United States Supreme Court's decision alters the ultimate basis for *Ryce I*:  the state law grounds of statutory interpretation of 8-1025 and the statute on which it depends, K.S.A. 2016 Supp. 8-1001.

OUR PREVIOUS DECISION IN *RYCE I*

We will not recount, here, the full factual and procedural history involved in *Ryce I*. Suffice it to say, it presents a standard DUI fact pattern:  erratic driving and traffic infractions, failed field sobriety tests, arrest, the giving of the consent advisory required by K.S.A. 2016 Supp. 8-1001(k), and a test refusal. Before Ryce's trial on charges of various traffic violations and test refusal, he filed a motion to dismiss the test refusal count on the grounds that 8-1025 unconstitutionally punished the exercise of his right to withdraw consent to a warrantless search. The district court ruled the statute was unconstitutional, and the State appealed. Before us, Ryce recognized that under Kansas law he had provided consent to blood alcohol content testing by driving on Kansas roadways. But he contended he had a right to withdraw that consent—a right he argued arose under the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights and was further protected by due process.

In affirming the district court, we began our analysis by examining the wording of K.S.A. 2016 Supp. 8-1025, which we noted "essentially stands on the shoulders of the implied consent provision," K.S.A. 2016 Supp. 8-1001. *Ryce I*, 303 Kan. at 906. The interpretation of 8-1025 "seem[ed] straightforward enough—8-1025 penalizes drivers who refuse to submit to a test that they have impliedly consented to under 8-1001." 303 Kan. at 907. But the reach of the statute depended on the provisions of 8-1001 because a driver is only "deemed to have given consent to submit to testing 'subject to the provisions' of article 10 of chapter 8 of the Kansas statutes." 303 Kan. at 907 (quoting

3

K.S.A. 2016 Supp. 8-1001[a]). Thus, 8-1025 applies in a very narrow set of circumstances: It only criminalizes a DUI suspect's express withdrawal of consent to a search. 303 Kan. at 909.

We next examined the provisions of K.S.A. 2016 Supp. 8-1001 and this court's interpretation and application of that statute. We will discuss the statutory provisions in more detail, but at this point we simply summarize "[o]ur caselaw[, which] has explained that a test taken after the driver receives the advisory required by 8-1001(k) 'is the product of the consent exception to the warrant requirement.'" *Ryce I*, 303 Kan. at 907-08 (quoting *State v. Johnson*, 297 Kan. 210, Syl. ¶ 8, 301 P.3d 287 [2013]). And "[w]e have equated an express refusal with a withdrawal of implied consent. *E.g.*, *State v. Garner*, 227 Kan. 566, 572, 608 P.2d 1321 (1980)." *Ryce I*, 303 Kan. at 908.

Turning to the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights to discuss the consent exception to the warrant requirement, we concluded: (1) Both a breath and blood test for blood alcohol content constitute a search; (2) both the United States and Kansas Constitutions protect citizens from unreasonable searches; (3) searches conducted without a warrant are per se unreasonable unless conducted pursuant to a recognized warrant exception; and (4) recognized warrant exceptions that might be implicated in a DUI case include consent, search incident to a lawful arrest, and probable cause plus exigent circumstances based on the evanescent nature of blood alcohol content evidence. *Ryce I*, 303 Kan. at 909-14, 919.

We also considered the State's argument that K.S.A. 2016 Supp. 8-1025 was constitutional because a driver could always be compelled to cooperate with a blood alcohol content test. The State offered numerous theories supporting this assertion, including the categorical application of the search-incident-to-lawful-arrest exception.

4

Reviewing Kansas caselaw, we noted that after the adoption of 8-1001, this court had upheld its constitutionality by concluding that a search conducted through a breath test could occur without a warrant because the search was conducted incident to an arrest. Subsequently, in *State v. Murry*, 271 Kan. 223, 225-26, 21 P.3d 528 (2001), this court recognized that, as of 1985, various legislative amendments meant that "8-1001 no longer requires an arrest." In light of these legislative changes, the *Murry* court recognized the constitutionality of Kansas' implied consent law could no longer depend on the categorical application of the search-incident-to-lawful-arrest exception. See K.S.A. 2016 Supp. 8-1001(b)(1)(B), (b)(2); 303 Kan. at 908, 920-23. As we will discuss in more detail below, in our *Ryce I* analysis we also interpreted United States Supreme Court precedent as indicating the search-incident-to-lawful-arrest exception would not categorically apply to a search for evidence of blood alcohol content. See *Ryce I*, 303 Kan. at 922.

Once this court moved away from the search-incident-to-lawful-arrest exception as a categorical basis for all searches conducted under K.S.A. 2016 Supp. 8-1001, Kansas courts instead relied on a categorical exception to the warrant requirement based on the evanescent nature of blood alcohol content giving rise to an exigent circumstance. *Murry*, 271 Kan. at 223, Syl. ¶ 2. Police must have probable cause that a crime has been committed in order to utilize this exception, but the Kansas Legislature amended 8-1001 so as to provide that probable cause of impaired driving is not required in all the circumstances where the implied consent provisions apply. See K.S.A. 2016 Supp. 8-1001(b)(1)(B), (b)(2); *State v. Declerck*, 49 Kan. App. 2d 908, 919, 317 P.3d 794, *rev. denied* 299 Kan. 1271 (2014) (holding 8-1001[b][2], [d] unconstitutional to the extent it allows a search after a traffic infraction combined with an accident resulting in injury or death, if there is no probable cause that drugs or alcohol were involved). As a result of these changes and the factual nature of the exigent circumstances exception, this court adopted consent as the constitutional basis for Kansas' implied consent statute. See

5

*Johnson*, 297 Kan. 210, Syl. ¶ 8. But the United States Supreme Court held in *Missouri v. McNeely*, 569 U.S. ____, 133 S. Ct. 1552, 1561, 185 L. Ed. 2d 696 (2013), that the natural dissipation of alcohol in the bloodstream does not establish a per se exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk driving situations.

In *Ryce I*, this historical review of caselaw led us back to consent as the only constitutional basis upholding all searches under K.S.A. 2016 Supp. 8-1001. We also recognized that the presence of a warrant or the application of a warrant exception might, if applied on a case-by-case basis, justify a warrantless search. Nevertheless, K.S.A. 2016 Supp. 8-1025 "narrowly and unambiguously penalizes a driver for refusing to submit to a search 'deemed consented to.'" *Ryce I*, 303 Kan. at 918 (quoting K.S.A. 2016 Supp. 8-1025). We concluded that "given the wording of 8-1025 and our caselaw indicating that refusal to submit to testing is really withdrawal of consent, our decision regarding whether 8-1025 is constitutional under Fourth Amendment principles ultimately depends on the application of the consent exception alone." 303 Kan. at 931.

Referring to the "deemed consented to" wording of K.S.A. 2016 Supp. 8-1025, we further explained that "if an officer requested to search a DUI suspect based on a warrant or some . . . warrant exception, the officer would not be 'deeming' the person to have consented. Consent would be irrelevant." *Ryce I*, 303 Kan. at 931; see also *Garner*, 227 Kan. at 572 (equating an express refusal to submit to a test with withdrawal of implied consent). In such a case, we noted: "Kansas' general obstruction statute, K.S.A. [2016] Supp. 21-5904(a)(3), might punish those situations as interfering with the execution of a warrant or otherwise interfering in the 'discharge of official duty' without need to resort to 8-1025." *Ryce I*, 303 Kan. at 918.

Nevertheless, we interpreted K.S.A. 2016 Supp. 8-1001 as going beyond those circumstances so that its categorical application depended on consent. 303 Kan. at 915-18 (explaining that when considering the facial constitutionality of a statute a court must "look to the circumstances actually affected by the challenged statute," not whether there is any possible set of circumstances for which a statute might be constitutional). This became important to our analysis because, as the United States Supreme Court had discussed in *Los Angeles v. Patel*, 576 U.S. ___, 135 S. Ct. 2443, 2451, 192 L. Ed. 2d 435 (2015), "when assessing whether a statute meets [the facially unconstitutional standard, where a law is unconstitutional in all its applications], the Court has considered only applications of the statute in which it actually authorizes or prohibits conduct." K.S.A. 2016 Supp. 8-1025 does not make it a crime to refuse a law enforcement officer's lawful order to submit to a blood alcohol content test; it makes it a crime to refuse to submit to a test deemed consented to—*i.e.*, to withdraw consent.

Applying the text of K.S.A. 2016 Supp. 8-1025 to the constitutional principles regarding reasonable searches, we held the State could not criminally punish a defendant for withdrawing his or her implied consent. Using due process analysis, we readily agreed with the State that it has a compelling interest in combating drunk driving problems. But K.S.A. 2016 Supp. 8-1025 was not narrowly tailored to serve those compelling interests. 303 Kan. at 957-63. Accordingly, we held 8-1025 "violates a suspect's Fourth and Fourteenth Amendment rights and . . . § 15 of the Kansas Constitution Bill of Rights." 303 Kan. at 963. We specifically declined to address whether the statute violated the Fifth Amendment prohibition against compelled self-incrimination, whether *Miranda* warnings needed to be given along with an implied consent advisory, or whether the statute violated the doctrine of unconstitutional conditions. 303 Kan. at 963-64.

7

On the same day we filed our decision in *Ryce I*, we also filed decisions in *State v. Wilson*, 303 Kan. 973, 368 P.3d 1086 (2016), and *State v. Wycoff*, 303 Kan. 885, 367 P.3d 1258 (2016). In both *Wilson* and *Wycoff*, we relied on our analysis in *Ryce I* and concluded the defendants in those cases could not be prosecuted for violating K.S.A. 2016 Supp. 8-1025. *Wilson*, 303 Kan. at 975; *Wycoff*, 303 Kan. at 886. In a fourth decision, *State v. Nece*, 303 Kan. 888, 367 P.3d 1260 (2016), we affirmed a district court's decision to suppress blood alcohol content testing results because the driver's consent, which was partially based on the statutorily required advisory that explained the effect of 8-1025, was not voluntarily given. We explained that the "consent was involuntary because it was obtained by means of an inaccurate, and therefore coercive, advisement." 303 Kan. at 897. In each of those cases, we also granted motions for rehearing in light of *Birchfield*, but, as we do in this case, today we reaffirm each of those decisions.

## *BIRCHFIELD*

As we mentioned, after our decision in *Ryce I* the United States Supreme Court decided *Birchfield*, 136 S. Ct. 2160. In hearing *Birchfield*, the Supreme Court consolidated two cases from North Dakota and one from Minnesota. A brief discussion of the facts of those cases helps explain how they apply to our analysis.

In one of the cases from North Dakota, a state trooper administered a roadside test of blood alcohol content and arrested Danny Birchfield. The trooper informed Birchfield that state law required him to undergo further testing and that a test refusal would expose him to criminal penalties. Birchfield refused a blood test and was charged under a North Dakota law that made it a crime to refuse to submit to a blood alcohol content test.

8

In the other North Dakota case, an officer arrested Steve Beylund for DUI and had Beylund transported to a hospital. At the hospital, the officer read an implied consent advisory and asked for a blood draw. Beylund agreed. Consequently, the State suspended his license but did not charge him with refusing a test. Beylund defended and appealed his license suspension on the grounds that his consent was coerced by the officer's warning that a refusal to submit to the blood test would be a crime.

Finally, in the case from Minnesota, officers arrested William Bernard, Jr., for driving while impaired and, at a police station, provided him with Minnesota's implied consent advisory. Minnesota's advisory, like North Dakota's, informed Bernard it was a crime to refuse to submit to a legally required test of blood alcohol content. Bernard refused officers' requests for a breath test.

When these cases reached the United States Supreme Court, the Court framed the issue as "whether the warrantless searches at issue here were reasonable." *Birchfield*, 136 S. Ct. at 2173. If such warrantless searches "comport[ed] with the Fourth Amendment," the Court stated, a state "may criminalize the refusal to comply with a demand to submit to the required testing, just as a State may make it a crime for a person to obstruct the execution of a valid search warrant." 136 S. Ct. at 2172.

In analyzing the root issue of whether the tests were, or would have been, reasonable, the *Birchfield* majority distinguished between breath and blood tests. Regarding warrantless breath tests, the Court held such tests are reasonable under the Fourth Amendment as searches incident to lawful arrest, an exception to the warrant requirement that could be applied categorically to all cases where a DUI arrest occurred. 136 S. Ct. at 2185. The Court explained that breath tests qualify as a search incident to a lawful arrest because the search would prevent the destruction of evidence, one of the

twin purposes of the search-incident-to-lawful-arrest exception. 136 S. Ct. at 2175-76, 2184.

The *Birchfield* Court reached a different holding with regard to blood tests, which the Court determined were "significantly more intrusive, and their reasonableness must be judged in light of the availability of the less intrusive alternative of a breath test." 136 S. Ct. at 2184. Ultimately, the Court held that "a breath test, but not a blood test, may be administered as a search incident to a lawful arrest for drunk driving." 136 S. Ct. at 2185. See generally 136 S. Ct. at 2174-83 (discussing the history of the search-incident-to-lawful-arrest exception and balancing privacy intrusions against governmental interests to see if the search-incident-to-lawful-arrest exception would apply to modern blood alcohol content searches).

Apart from these holdings, the Supreme Court made several other rulings which are of import to *Ryce I* and its companion cases. First, the Court firmly expressed its understanding that breath tests, as well as blood tests, are indeed "searches." *Birchfield*, 136 S. Ct. at 2173; see *Ryce I*, 303 Kan. at 912 (reaching the same conclusion). Second, the Court did not depart from its holding in *McNeely*, in which it refused to adopt an across-the-board rule applying the probable-cause-plus-exigent-circumstances exception to blood alcohol content tests. *Birchfield*, 136 S. Ct. at 2174 (asserting that this exception still relies on a case-by-case analysis); see *Ryce I*, 303 Kan. at 924-25. Third, the Supreme Court rejected the States' argument that warrantless blood tests were "justified based on the driver's legally implied consent to submit to them." *Birchfield*, 136 S. Ct. at 2185-86. Finally, the Court held that "motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." *Birchfield*, 136 S. Ct. at 2186; see *Ryce I*, 303 Kan. at 955-63.

As to this last point, in discussing whether the consent exception saved the legality of the demand for blood testing in the North Dakota cases, the United States Supreme Court recognized that a suspect's consent to a search generally renders that search reasonable. 136 S. Ct. at 2185; see *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). The Supreme Court also acknowledged it had previously approved of "the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply." *Birchfield*, 136 S. Ct. at 2185; see *McNeely*, 133 S. Ct. at 1565-66 (plurality opinion). Nevertheless, "[i]t is another matter . . . for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test." *Birchfield*, 136 S. Ct. at 2185. The *Birchfield* Court concluded that "[t]here must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads" and drew the line at criminal penalties. 136 S. Ct. at 2185-86.

Ultimately, the Supreme Court reversed Birchfield's conviction because he was criminally prosecuted for refusing a warrantless *blood* test. *Birchfield*, 136 S. Ct. at 2186. But Bernard, who had been prosecuted in Minnesota for refusing a warrantless *breath* test, did not receive similar relief. Because the Fourth Amendment did not require a warrant for a breath test given that the search-incident-to-lawful-arrest exception applied, the Court held that Bernard could be prosecuted under the Minnesota test refusal statute. 136 S. Ct. at 2186. As for Beylund, who submitted to a blood test only after being told the law required him to do so, the Supreme Court remanded his case to the North Dakota Supreme Court to reevaluate whether his consent was voluntary in light of its holding that a blood test could not be performed as a search incident to arrest. 136 S. Ct. at 2186.

11

*Birchfield* thus held that the search-incident-to-lawful-arrest exception is a categorical exception to the warrant requirement permitting an officer to demand a breath test from a person arrested for a DUI violation. See 136 S. Ct. at 2185. *Birchfield* does not, however, answer the specific question of statutory interpretation upon which *Ryce I* was decided. See *Ryce I*, 303 Kan. at 918 ("[K.S.A. 2016 Supp. 8-1025] narrowly and unambiguously penalizes a driver for refusing to submit to a search 'deemed consented to.'").

OUR INTERPRETATION OF THE TEST REFUSAL STATUTE STANDS

We now consider how *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), affects our holding in *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*). To assist us, we asked the parties to provide supplemental briefs limited to the following issues:

"Q1:    Whether K.S.A. [2016] Supp. 8-1025 limits the application of the criminal
        refusal penalties so as to punish only individuals who withdraw implied consent
        to a test contemplated by K.S.A. [2016] Supp. 8-1001[.]

"Q2:    Whether . . . [*Birchfield*] requires a different outcome in [*Ryce I*] regarding
        warrantless breath tests[.]"

We specifically instructed the parties to "support their arguments with standard principles of statutory interpretation/construction, including the use of legislative history if appropriate" and also permitted the parties to address how K.S.A. 2016 Supp. 8-1001 and 8-1025 should be read together.

12

Our standard of review of these questions remains the same as in *Ryce I*, where we explained that the constitutionality of a statute is a question of law subject to unlimited review. Here, the question of law depends, at least in part, on the interpretation of K.S.A. 2016 Supp. 8-1025 and the statute it references, K.S.A. 2016 Supp. 8-1001. *Ryce I*, 303 Kan. at 905-06; see also, *e.g.*, *State v. Soto*, 299 Kan. 102, 121, 322 P.3d 334 (2014). Under the rules of statutory interpretation, we must ascertain legislative intent by looking to the plain language of a statute. *Ryce I*, 303 Kan. at 906. In addition, "we are precluded from adding words to or striking words from 8-1025 to criminalize any action other than refusing to submit to a test deemed consented to—that is, we cannot read 8-1025 to do more than criminalize the withdrawal of implied consent." 303 Kan. at 918-19.

The State contends the *Birchfield* decision "undermines both the rationale of the majority opinion [in *Ryce I*] and this [c]ourt's conclusion that the search incident to arrest exception would not apply to searches for blood alcohol content." The State advocates that under *Birchfield* there is no right to refuse a breath test that is performed incident to a lawful arrest, which means "the State can legally punish a breath test refusal." In response to our questions, the State argued that K.S.A. 2016 Supp. 8-1025 evinces the legislature's intent to criminalize the act of refusing to submit to a category of tests (blood, breath, urine, or other bodily fluids)—not, as decided in *Ryce I*, the act of withdrawing consent. It urges this court to construe 8-1025's reference to tests "deemed consented to under K.S.A. 8-1001(a)" as simply a "listing [of] the subject matter of the tests" (a blood test, *e.g.*, or a breath test), not restricting the application of 8-1025 to consent searches alone.

At the outset, we agree with one portion of the State's argument. As it correctly observes, *Birchfield* requires us to modify a portion of our decision in which we applied past United States Supreme Court decisions to hold that a blood alcohol content test—

13

whether testing breath, blood, urine, or other bodily substance—could not be justified under the search-incident-to-lawful-arrest warrant exception. We stated:

> "[N]either of the two purposes traditionally underlying the search incident to lawful arrest exception (officer safety and preservation of evidence) applies to the testing of blood alcohol content. See *Riley v. California*, 573 U.S. ___, ___, 134 S. Ct. 2473, 2484, 189 L. Ed. 2d 430 (2014) (discussing cases beginning with *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 [1969], establishing and applying two-part test for search incident to arrest: officer safety and destruction of evidence within the control of the arrestee). Alcohol in the bloodstream poses no threat to officer safety, and when discussing preservation of evidence with respect to the search incident to lawful arrest exception (as distinct from the evanescent evidence exception), the reasoning is to prevent destruction of evidence *within a suspect's control*. See, e.g., *Arizona v. Gant*, 556 U.S. 332, 335, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009). Evidence of alcohol within the bloodstream is not in a suspect's control once he or she is monitored and will diminish at a predictable rate. See *State v. Milligan*, 304 Or. 659, 671, 748 P.2d 130 (1988)." *Ryce I*, 303 Kan. at 922.

We also noted the United States Supreme Court had recently rejected the argument that the evanescent nature of blood alcohol content meant evidence could be lost and, therefore, DUI cases presented probable cause plus an exigent circumstance justifying categorical application of the warrant exception to all DUI cases. 303 Kan. at 925 (citing *Missouri v. McNeely*, 569 U.S. ___, ___, 133 S. Ct. 1552, 1561, 185 L. Ed. 2d 696 [2013]).

Nevertheless, as the State notes, *Birchfield* held "a breath test, but not a blood test, may be administered as a search incident to lawful arrest for drunk driving." *Birchfield v. North Dakota*, 136 S. Ct. at 2185. We, therefore, modify our decision in *Ryce I* to the extent our discussion of *State v. Birchfield*, 2015 ND 6, 858 N.W.2d 302 (2015), *rev'd and remanded* 136 S. Ct. 2160, *vacated* 885 N.W.2d 62 (2016), and *State v. Bernard*, 859

N.W.2d 762 (Minn. 2015), *aff'd* 136 S. Ct. 2160 (2016), is inconsistent with the United States Supreme Court's decision in *Birchfield.* See *Ryce I*, 303 Kan. at 950-55. We further modify *Ryce I* to reflect the validity of conducting a *breath* test in a DUI case where an arrest is made under the warrant exception of a search incident to lawful arrest. See *Ryce I*, 303 Kan. at 922.

The State's arguments do not persuade us that we must go further in modifying *Ryce I*, however.

First, regarding blood tests, *Birchfield* reinforces our conclusion that the search-incident-to-lawful-arrest exception does not always apply when an officer demands submission to a blood alcohol content test. This means, at a minimum, that K.S.A. 2016 Supp. 8-1025 unconstitutionally punishes a driver who refuses to submit to a warrantless blood test. *Birchfield*'s analysis also suggests a separate analysis must be conducted regarding urine or other bodily substances, an analysis we leave for another day.

Second, we disagree with the State's recasting of the issue in this case. Our decision did not rest on whether a blood alcohol content test could be reasonable under the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights. We recognized it could be, although we viewed the class of such situations more narrowly than we now must in light of the categorical application of the search-incident-to-lawful-arrest exception to breath tests. Nor did the *Ryce I* outcome depend on whether the State could punish a refusal to submit to a reasonable search. We concluded the State could impose such a punishment. See 303 Kan. at 918-19. Rather, the resolution of Ryce's arguments ultimately rested on interpretation of a statute—whether K.S.A. 2016 Supp. 8-1025 imposed that punishment. In other words, does 8-1025 actually punish a refusal to submit to a search that is reasonable under the federal and state constitutions, or does it

15

punish something different, *e.g.*, the withdrawal of consent. And the Kansas Supreme Court is the ultimate arbiter of state statutory interpretation. See *California v. Freeman*, 488 U.S. 1311, 1313, 109 S. Ct. 854, 102 L. Ed. 2d 957 (1989) ("Interpretations of state law by a State's highest court are, of course, binding upon this Court.").

Third, the difficulty with the State's overarching argument—*i.e.*, that K.S.A. 2016 Supp. 8-1025 criminalizes "not the withdrawal of consent, but rather the refusal to submit to a category of tests"—is that it reads the phrase "deemed consented to" entirely out of the statute and ignores this court's longstanding caselaw interpreting a test refusal as a withdrawal of consent. See, *e.g.*, *State v. Garner*, 227 Kan. 566, 572, 608 P.2d 1321 (1980). But rules of statutory interpretation, as we have explained, do not allow us to ignore words in a statute, and 8-1025 limits its impact to test refusals based on consent. *Ryce I*, 303 Kan. at 918-19. Furthermore, longstanding caselaw holds that the authority for a blood alcohol content test taken pursuant to K.S.A. 2016 Supp. 8-1001 rests on consent, not on the authority of a law enforcement officer to issue a lawful order to submit to a search. See *Johnson*, 297 Kan. 210, Syl. ¶ 8. We cannot lightly ignore this history because "[t]he doctrine of stare decisis 'instructs that points of law established by a court are generally followed by the same court and courts of lower rank in later cases in which the same legal issue is raised.'" *State v. Spencer Gifts*, 304 Kan. 755, 766, 374 P.3d 680 (2016).

This caselaw rested, at least in part, on pre-*Birchfield* holdings of the United States Supreme Court, holdings which led this court some 15 years ago to conclude that the search-incident-to-lawful-arrest exception to the warrant requirement did not apply to all the circumstances covered by K.S.A. 2016 Supp. 8-1025. We had rejected wholesale application of this warrant exception because K.S.A. 2016 Supp. 8-1001 allows blood

alcohol content testing *without an arrest* and even without probable cause. See *State v. Murry*, 271 Kan. 223, 226-27, 21 P.3d 528 (2001); see also K.S.A. 2016 Supp. 8-1001(b)(1)(B), (b)(2); *State v. Declerck*, 49 Kan. App. 2d 908, 317 P.3d 794, *rev. denied* 299 Kan. 1271 (2014). Certainly, *Birchfield* changes the discussion of whether the search-incident-to-lawful-arrest exception applies in situations not covered by 8-1001 or 8-1025. But *Birchfield* does not rewrite the Kansas statutes.

Certain provisions of K.S.A. 2016 Supp. 8-1001(b)-(d) become particularly important post-*Birchfield*. Through these provisions, the Kansas Legislature has narrowed the application of the search-incident-to-lawful-arrest exception to a limited set of circumstances by restricting when a law enforcement officer can demand—*i.e.*, order—a driver to submit to a blood alcohol content test. Significantly, while the statutory implied consent advisory informs the driver he or she is required to take a blood alcohol content test or face consequences, K.S.A. 2016 Supp. 8-1001(k), an officer can only "request" that a driver submit to a test, K.S.A. 2016 Supp. 8-1001(b), (c). Indeed, officers may only "direct" the administration of a blood test and only when either (1) the driver consents or (2) the driver is unable to consent or refuses consent *and* (a) has been involved in a serious injury accident *and* (b) could be cited for any traffic offense. K.S.A. 2016 Supp. 8-1001(d).

Furthermore, contrary to the State's position, it is not at all apparent, from the plain language of the statute, that the legislature meant to criminalize a general act of test refusal as opposed to a specific refusal to undergo a blood alcohol content test previously "consented to" under the implied consent statute. The State supports its argument with K.S.A. 2016 Supp. 8-1013(i), a definitional statute, which defines test refusal as "failure to submit to or complete *any test* of the person's blood, breath, urine, or other bodily substance," and does not mention any limiting "consent" language. (Emphasis added.)

17

The State's point would be more compelling if this were the sole statutory definition for test refusal. But the legislature more particularly defined the specific crime of test refusal in K.S.A. 2016 Supp. 8-1025, which refers to refusing to submit to tests "deemed consented to" under K.S.A. 2016 Supp. 8-1001(a). Moreover, the opening provision of K.S.A. 2016 Supp. 8-1013 lists the statutes to which it applies and 8-1025 is not listed. Some other definition in 8-1013 refer to 8-1025, but the definition of "test refusal" or "refuses a test" in 8-1013(i) does not. See K.S.A. 2016 Supp. 8-1013(b)(1), (j). Under the plain language of 8-1013(i), it does not apply. Thus, the State's reliance on 8-1013(i) fails.

Nor are we persuaded by the State's legislative history argument, which cites to a district attorney's testimony before a legislative committee. In that testimony, the attorney referred to the importance of "criminalizing . . . the refusal" to submit to blood alcohol content tests. The State's argument demands we ignore the plain language of the statute and instead seek to divine legislative intent from one phrase in the testimony of one witness at a legislative hearing. We have noted that we must proceed cautiously when declarations of legislative purpose appear in testimony or other legislative history but are not included in the text of legislation. See *Merryfield v. Sullivan*, 301 Kan. 397, 401, 343 P.3d 515 (2015); *Brennan v. Kansas Insurance Guaranty Ass'n*, 293 Kan. 446, 459, 264 P.3d 102 (2011). In part, because of the difficulties of ascertaining legislative intent from the testimony of those appearing before legislative committees, this court deems the language of a statute to be the primary consideration in ascertaining the intent of the legislature because the best and only safe rule for determining the intent of the creators of a written law is to abide by the language they have chosen to use. See, *e.g.*, *Spencer Gifts*, 304 Kan. at 761.

Finally, even looking to *Birchfield* as persuasive authority, it does not prompt us to reconsider our previous interpretation of K.S.A. 2016 Supp. 8-1025 because the North Dakota and Minnesota statutory schemes, although sharing some similarities to Kansas', are meaningfully different.

Regarding the shared characteristics of the North Dakota and Kansas penalty statutes for test refusal, each penalty statute refers to tests requested pursuant to an implied consent statute. As to differences, K.S.A. 2016 Supp. 8-1025(a) criminalizes "refusing to submit to or complete a test or tests *deemed consented to* under K.S.A. 8-1001(a)," while N.D. Cent. Code § 39-08-01(1)(e)(2) (2016) criminalizes refusal to submit to a chemical test "*at the direction of a law enforcement officer* under section 39-20-01." (Emphases added.)

More differences emerge when comparing the implied consent statutes of the two states:  North Dakota requires a suspect be arrested and informed he or she is or will be charged with DUI, for example, whereas Kansas does not. See N.D. Cent. Code § 39-20-01(2) (2016); K.S.A. 2016 Supp. 8-1001(b). Also of note, North Dakota statutes make a *separate* provision, apart from the implied consent statute, pertaining to drivers involved in serious injury crashes. See N.D. Cent. Code § 39-20-01.1 (2016). This statute make no reference to implied consent or arrest and instead states that so long as there is probable cause to believe the driver has been driving under the influence the police "shall request" a chemical test—and if a person refuses, the police "shall request a search warrant to compel the driver to submit to a chemical test or tests." N.D. Cent. Code § 39-20-01.1(2)-(3) (2016).

These differences bolster our conclusion that K.S.A. 2016 Supp. 8-1025 is premised on the consent exception alone, as opposed to the North Dakota approach of

19

more broadly penalizing refusal to submit to a search directed or ordered by a law enforcement officer or judicial officer. See *Ryce I*, 303 Kan. at 914 ("If an officer relied on something else to search, *i.e.*, a warrant or a warrant exception other than consent, then the withdrawal of consent—or even the presence of express consent—would be irrelevant to the authority to perform the test.").

Minnesota also more directly makes it a crime "to refuse to submit to a chemical test of the person's blood, breath, or urine under section 169A.51 (chemical tests for intoxication), or 169A.52 (test refusal or failure; revocation of license)." Minn. Stat. § 169A.20, subd. 2 (2016). Minnesota's implied consent law further provides: "The test may be *required* of a person when an officer has probable cause to believe the person" has been driving while impaired *and* certain other conditions exist, including when the person has been arrested for violating the DUI law. (Emphasis added.) Minn. Stat. § 169A.51, subd. 1(b) (2016). We further note that the Minnesota Supreme Court has not construed its implied consent statute as this court, for a significant period of time, has interpreted Kansas'. And more recently, the state court interpretations of the Minnesota and Kansas test refusal statutes have likewise differed. See *State v. Bernard*, 859 N.W.2d 762 (Minn. 2015). As a result, the United States Supreme Court based its decision as to Bernard on a state law interpretation by the Minnesota Supreme Court that recognized the test refusal statute punished drivers who refused a test "required" by state law. See *Birchfield*, 136 S. Ct. 2160.

We do note that the Minnesota implied consent statute, like Kansas', allows officers to search without an arrest. But, in Minnesota, there must be probable cause that the driver had been operating the vehicle while impaired and the driver was either involved in "a motor vehicle accident or collision resulting in property damage, personal injury, or death"; the driver refused a preliminary screening test; or the driver took a

20

preliminary screening test and the results show an alcohol concentration of .08 or more. Minn. Stat. § 169A.51, subd. 1(b) (2016). Furthermore, in general, the Minnesota statutes share some significant similarities to the Kansas statutes in terms of structure and some other restrictions.

Nevertheless, these similarities are offset by the notable differences between the Kansas and Minnesota statutes. Specifically, as we have discussed, where the Minnesota implied consent statute allows a law enforcement officer to "require[]" a breath test and punishes a driver for refusing a required test (Minn. Stat. § 169A.20, subd. 2 (2016); Minn. Stat. § 169A.51, subd. 1[b]) (2016), the Kansas implied consent law only allows the officer to "request" a breath test and punishes the driver for not submitting to a test "deemed consented to" under the implied consent statute (K.S.A. 2016 Supp. 8-1001[b], [c]; K.S.A. 2016 Supp. 8-1025[a]).

We thus are not persuaded to depart from the holding of *State v. Ryce*, 303 Kan. 899, 368 P.3d 342 (2016) (*Ryce I*); we continue our previous interpretation of K.S.A. 2016 Supp. 8-1025. "[A] warrant or some warrant exception . . . might sometimes justify the State demanding a DUI suspect submit to testing, irrespective of any implied consent provided by 8-1001." *Ryce I*, 303 Kan. at 918. But 8-1025 "does not contain broad language penalizing failure to cooperate with a warrant search or a search conducted pursuant to a warrant exception" and instead criminalizes refusal to submit to a test that could proceed only with consent. 303 Kan. at 918. *Birchfield* established that the law may be able to compel a DUI suspect to submit to a chemical test for alcohol through a search incident to a lawful arrest or a warrant (or punish resistance through an obstruction of justice charge), but the only conduct criminalized by 8-1025 is withdrawal of implied consent to a search when the police were relying on that consent to justify the search in

21

the first place. *Birchfield* does not require, or persuade us, to adopt a contrary interpretation of Kansas' statutes.

K.S.A. 2016 SUPP. 8-1025 IS FACIALLY UNCONSTITUTIONAL.

The State next argues that regardless of how we resolved the statutory interpretation issue, *Birchfield v. North Dakota*, 579 U.S. ___, 136 S. Ct. 2160, 195 L. Ed. 2d 560 (2016), still established our premise in *Ryce I* was incorrect, as some blood alcohol content testing may be done pursuant to the search-incident-to-lawful-arrest exception to the warrant requirement. "Hence," the State contends, "even if the majority continues to construe the statute to criminalize the withdrawal of consent, that would not make the statute unconstitutional."

As we have discussed, the United States Supreme Court extended the search-incident-to-lawful-arrest exception to "warrantless breath tests incident to arrest for drunk driving." *Birchfield*, 136 S. Ct. at 2184. But this clarification of search-and-seizure law does not change our decision about the constitutionality of K.S.A. 2016 Supp. 8-1025. As we discussed at length in the preceding section, the key to *Ryce I* and its sister cases is an issue of statutory interpretation: The Kansas implied consent and criminal refusal statutes are "[p]remised on [the] consent exception" to the warrant requirement. *Ryce I*, 303 Kan. at 902 (discussing K.S.A. 2016 Supp. 8-1001 and 8-1025, which refer to tests that are "deemed consented to"). The question in *Ryce I* was whether Kansas could criminalize a suspect's withdrawal of implied consent—not, as in *Birchfield*, whether warrantless blood and breath tests were reasonable under the Fourth Amendment. Compare *Ryce I*, 303 Kan. at 902 ("The ultimate question is whether, when a driver exercises the constitutional right to withdraw consent, Kansas may criminally punish the individual for this choice under the criminal refusal statute . . . ."), and *State v. Johnson*, 297 Kan. 210, Syl. ¶ 8, 301 P.3d 287 (2013) (explaining that a test taken after receiving

the 8-1001(k) notice "'is the product of the consent exception to the warrant requirement'"); with *Birchfield*, 136 S. Ct. at 2172 ("[S]uccess for all three petitioners depends on the proposition that the criminal law ordinarily may not compel a motorist to submit to the taking of a blood sample or to a breath test unless a warrant [issues].").

The State theoretically may enact a statute and, under *Birchfield*, require submission to a breath test as a search incident to arrest—but that is true for statutes that more broadly criminalize refusal to submit to any test that is constitutionally valid, not for a statute like K.S.A. 2016 Supp. 8-1025 which only criminalizes withdrawal of consent. We think it worthwhile, too, to note that even if we were to depart from this interpretation, *Birchfield* would not serve to insulate K.S.A. 2016 Supp. 8-1025 from constitutional challenges. For example, officers need not arrest a suspect before requesting a breath test, and 8-1001 contemplates warrantless blood tests—all situations where the search-incident-to-lawful-arrest exception would not apply.

Thus, our previous reasoning in *Ryce I* as to how and why K.S.A. 2016 Supp. 8-1025 is facially unconstitutional stands. See 303 Kan. at 913-19, 945-63 (discussing the connection between Ryce's Fourth Amendment claim and his due process arguments). As we said before, "[i]n essence, the State's reasons are not good enough, and its law not precise enough." *Ryce I*, 303 Kan. at 963.

Given this holding, we need not decide Ryce's alternative arguments as to why K.S.A. 2016 Supp. 8-1025 must be struck down. See *Ryce I*, 303 Kan. at 963-64. We conform to our holding in *Ryce I*, which affirmed the district court's decision to dismiss the criminal charge against Ryce that criminalized his refusal to submit to a chemical test for alcohol. 303 Kan. at 964.

Affirmed.

ROSEN, J., not participating.

MICHAEL J. MALONE, Senior Judge, assigned.[1]

* * *

STEGALL, J., dissenting:  For the reasons set forth in my earlier dissent in *State v. Ryce*, 303 Kan. 899, 964-72, 368 P.3d 342 (2016), I dissent.

**REPORTER'S NOTE:**  Senior Judge Malone was appointed to hear case No. 111,698 vice Justice Rosen under the authority vested in the Supreme Court by K.S.A. 20-2616.